907 P.2d 198

**Tonnie LUCERO, Petitioner–Appellee,**

v.

**Emmanuel HART and Kimberly Thompson, Respondents– Appellants.**

**No. 16173.**

Court of Appeals of New Mexico.

Sept. 19, 1995.

**796**

Charles B. Sanchez, Belen, for Respondent–Appellant Kimberly Thompson.

Steven J. Clark, Peralta, for Petitioner–Appellee.

## OPINION

DONNELLY, Judge.

Appellant, Kimberly Thompson (Mother), appeals from an order granting visitation to Appellee, Tonnie Lucero (Grandmother), the paternal grandmother of A.H., a four-year-old child. Mother's appeal poses three issues: (1) whether the trial court had jurisdiction to authorize grandparent visitation when no order adjudicating the identity of the father of the child was ever entered, (2) whether the trial court had jurisdiction to order grandparent visitation when Grandmother's son had previously relinquished his parental rights, and (3) whether the trial court abused its discretion in granting Grandmother visitation. For the reasons discussed herein, we reverse.

## FACTS

Mother and Emmanuel Hart (Father) had a five-year relationship. They were never married. During that time, Mother became pregnant. Their son, A.H., was born on June 14, 1991. Father acknowledged paternity of A.H. and was named as the child's father on the birth certificate. Mother and Father separated shortly after A.H.'s birth. On August 13, 1991, Mother filed a petition seeking a time-sharing and parenting plan, the payment of child support, and a permanent restraining order against Father enjoining him from contacting or harassing both her and her family. In the petition, Mother alleged that Father "has harassed [her] both verbally and mentally, as well as [her] family." Mother and Father agreed to mediation of the matter and entered into a temporary agreement on October 16, 1991, regarding custody, child support, and the payment of medical expenses. Under the agreement, Mother was awarded sole custody of A.H. Approximately one year later, on October 15, 1992, Father voluntarily relinquished his parental rights to A.H.

On April 8, 1994, Grandmother filed a petition to establish the paternity of A.H. and for the award of reasonable grandparent visitation rights. Mother objected to any award of visitation. However, following an evidentiary hearing the trial court granted limited grandparent visitation. The trial court found, among other things, that Grandmother had some contact with A.H. until he was six months old, and that after Father's relinquishment of parental rights, A.H. had no relationship with members of the paternal side of his family. The trial court concluded that it was in the child's best interests to award a right of visitation to Grandmother, and that she should "be given the opportunity to re-establish a relationship with her grandson." Apparently, because of the past history of animosity between Grandmother and Mother, the trial court's order limited Grandmother's visitation to two hours a week, ordered that the "parties shall have no contact during [Grandmother's] visitation," and also ordered that neither party disparage the other in A.H.'s presence.

*JURISDICTION*

We first consider Mother's argument that the trial court lacked jurisdiction to grant Grandmother's visitation petition because a court order had never been entered declaring Father to be A.H.'s father. Although we agree with Mother that an integral element of proof underlying a request for visitation under the Grandparent's Visitation Privileges Act, NMSA 1978, Sections 40–9–1 to 40–9–4 (Repl.Pamp.1994), is a showing that the petitioner is either by blood, marriage, or adoption a grandparent of the child in question, our examination of the record in the instant case shows that Grandmother satisfied this requirement.

■ Under the Grandparent's Visitation Privileges Act, a trial court may grant visitation privileges in the rendering of a judgment as to the existence of a parent-child relationship pursuant to the Uniform Parentage Act, NMSA 1978, Sections 40–11–1 to 40–11–23 (Repl.Pamp.1994). Section 40–9–2(A). Under the Uniform Parentage Act, paternity may be presumed when a man: (1) acknowledges his paternity in a writing filed with the vital statistics bureau of the department of health; (2) is voluntarily named as the child's father on the birth certificate; or (3) is obligated to support the child under a written voluntary promise or by court order. Section 40–11–5(A)(3)(a)–(c). Here, the record shows that both Mother and Father acknowledged that Father was, in fact, the natural father of A.H. *See In re Paternity of JRW*, 814 P.2d 1256, 1260 (Wyo.1991) (former husband presumed father where he was named on birth certificate and made voluntarily promise to pay child support). Moreover, following the evidentiary hearing on the petition for grandparent visitation, Mother submitted a requested finding of fact stating that the biological father of A.H. is Grandmother's son. The trial court adopted a finding that Father was A.H.'s biological father, and this finding is supported by substantial evidence. *Cf. Division of Child Support Enforcement ex rel. Blake v. Myrks*, 606 A.2d 748, 752 (Del.1992) (father who admitted paternity at original support hearing barred from denying it at support modification hearing). Under these circumstances, Grand-

mother has presented sufficient evidence showing that her son is the natural father of A.H. and has satisfied a threshold requirement of the Grandparent's Visitation Privileges Act entitling her to seek an award of grandparent visitation.

■ Alternatively, Mother, relying on *Christian Placement Service, New Mexico Christian Children's Home v. Gordon*, 102 N.M. 465, 470, 697 P.2d 148, 153 (Ct.App. 1985), argues that the trial court was without jurisdiction to award grandparent visitation here because Father's parental rights had been terminated. She argues that Grandmother's rights were derivative of those of the father and that termination of Father's parental rights effectively cut off any legal rights or standing she previously possessed which would have entitled her to apply for visitation. The Court in *Christian Placement Service* held that statutory grandparent visitation rights do not apply in adoption proceedings after the termination of the rights of the natural parents. *Id.* at 470, 697 P.2d at 153. However, *Christian Placement Service* is not controlling here. That case was decided prior to the 1993 repeal of the former grandparent visitation statute and the enactment of the present Act which materially revised the law. *See* Catherine Bostock, *Does the Expansion of Grandparent Visitation Rights Promote the Best Interests of the Child?: A Survey of Grandparent Visitation Laws in the Fifty States*, 27 Colum. J.L. & Soc. Probs. 319, 347 n. 138 (1994).

Section 40–9–2(E) of the Grandparent's Visitation Privileges Act now expressly permits a biological grandparent to petition for grandparent visitation when a grandchild has been adopted or is sought to be adopted by a stepparent, a relative of the grandchild, a person designated to care for the grandchild under the provisions of a deceased parent's will, or a person who sponsored the grandchild at a baptism or confirmation conducted by a recognized religious organization. In addition, Section 40–9–2(F) provides in part that "[w]hen a minor child is adopted by a stepparent *and* the parental rights of the natural parent terminate or are relinquished, the biological grandparents are not precluded from attempting to establish visitation privi-

leges." (Emphasis added.) Section 40–9–2(F) further provides that when a petition for grandparent visitation

> is filed during the pendency of an adoption proceeding, the petition shall be filed as part of the adoption proceedings [and the] provisions of the Grandparent's Visitation Privileges Act shall have no application in the event of a relinquishment or termination of parental rights in cases of other statutory adoption proceedings.

■ Viewing Sections 40–9–1 to 40–9–4 of the Grandparent's Visitation Privileges Act in their entirety, we think it is clear that our legislature in enacting the new legislation intended to modify prior law so as to extend the right of grandparent visitation in proper cases, except where expressly precluded by statute. *See* Bostock, *supra,* at 341 (there has been a trend toward expanding such rights and fewer states continue to make grandparent visitation rights derivative of parental rights). *See generally State ex rel. Bird v. Apodaca,* 91 N.M. 279, 284, 573 P.2d 213, 218 (1977) (when legislature enacts new law it is presumed to have intended to change prior law).

Pennsylvania and Indiana have enacted legislation similar to New Mexico's provision for grandparent visitation in the event of stepparent adoption. *See In re Groleau,* 585 N.E.2d 726, 728 (Ind.Ct.App.1992); *Rigler v. Treen,* 442 Pa.Super. 533, 660 A.2d 111, 113 (1995). In construing such statutes, the courts in Indiana and Pennsylvania have upheld the right of grandparent visitation in certain instances, despite the termination of parental rights. In *Groleau* the court held that it would presume the legislature intended the language of a statute to be applied logically, and the mere fact that a parent agreed to the termination of his or her parental rights would not automatically extinguish the visitation rights of the grandparents. *Groleau,* 585 N.E.2d at 728. Similarly, in *Rigler,* the Pennsylvania court held that "[s]ince the grandparents' rights survive such an adoption [by a stepparent], it follows that the termination of the biological parent's rights alone does not cut off visitation rights of the biological grandparents." *Rigler,* 442 Pa.Super. 533, 660 A.2d at 113; *accord Colorado ex rel. N.S.,* 821 P.2d 931, 932 (Colo.Ct. App.1991) ("Grandparent visitation rights are derived from statute and are not contingent on the continuation of the parent-child legal relationship.").

■ In enacting the Grandparent's Visitation Privileges Act, we think it is clear that our legislature intended that the trial court, upon a showing that such visitation was in the best interests of the child, could authorize grandparent visitation even though Grandmother's son had relinquished his parental rights.

## BEST INTERESTS OF THE CHILD

Mother also argues that the trial court's award of child visitation to Grandmother constituted an abuse of discretion because there is no evidence to support a finding that the criteria specified in Section 40–9–2(G) have been satisfied. Grandmother contends that this issue was not preserved for appellate review because Mother failed to comply with SCRA 1986, 12–208 (Repl.1992) and 12–213 (Cum.Supp.1995), and has not specifically challenged on appeal the trial court's finding that visitation by Grandmother was in A.H.'s best interests. We disagree.

■ To preserve an issue for appeal, unless it is jurisdictional, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court. *Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App. 1987); *see also* SCRA 1986, 1–046 (Repl. 1992); 12–213(A)(3); 12–216(A) (Cum.Supp. 1995). It is only when the record fails to indicate that an argument was fairly and timely presented to the trial court, or if the appellant does not set forth a specific attack on a finding of the trial court in his brief-in-chief, the challenge will not be considered on appeal.

■ Here, Mother submitted requested findings of fact to the trial court relating to each of the criteria listed in Section 40–9–2(G). Mother's requested Finding of Fact No. 19, which stated that "[i]t is not in [the child's] best interests that visitation rights be awarded to [Grandmother], regardless of how limited," was rejected by the trial court.

Instead, the court adopted a finding that "[i]t is in the best interest of the [child], that he maintain contact with the paternal branch of his family." Mother's brief-in-chief on this issue reiterates the same argument her counsel made at the hearing below and is consistent with her requested findings of fact and conclusions of law. Thus, we conclude that Mother properly preserved this issue for review.

At common law, there was no recognized privilege of grandparent visitation. *See White v. Jacobs,* 198 Cal.App.3d 122, 243 Cal.Rptr. 597, 597 (1988); *In re Goldfarb,* 6 N.J.Super. 543, 70 A.2d 94, 96 (1949); *In re Nearhoof,* 178 W.Va. 359, 359 S.E.2d 587, 589 n. 3 (1987). *See generally* Annotation, *Grandparents' Visitation Rights,* 90 A.L.R.3d 222, § 2[a] (1979). Today, however, in response to material changes in the demographics of American families, all fifty states have enacted statutes granting some form of grandparent visitation rights. *See* Bostock, *supra,* at 319 [1]; Anne M. Jackson, Comment, *The Coming of Age of Grandparent Visitation Rights,* 43 Am.U.L.Rev. 563, 564 (1994) [2]; 3 John P. McCahey, et al., *Child Custody & Visitation Law and Practice* § 16.12[3], at 16–68 (1995).

Under New Mexico law, Section 40–9-2(G) provides that in considering a petition for grandparent visitation, the trial court shall assess:

(1) the best interests of the child;

(2) the prior interaction between the grandparent and the child;

(3) the prior interaction of the grandparent and each parent of the child;

(4) the present relationship between the grandparent and each parent of the child; and

(5) time-sharing or visitation arrangements that were in place prior to filing of the petition.

*Id.* In evaluating these criteria, the trial court must carefully consider each factor in light of the evidence presented, however, the primary concern in every case is whether the grandparent or grandparents have shown that an award of visitation is in the best interests and welfare of the child. *See Ridenour v. Ridenour,* 120 N.M. 352, 355, 356–57, 901 P.2d 770, 773, 774–75 (Ct.App.), *cert. denied,* 120 N.M. 68, 898 P.2d 120 (1995); *cf. In re Sanders,* 108 N.M. 434, 437, 773 P.2d 1241, 1244 (Ct.App.1989) (party seeking relief generally has burden of proof).

Determination of a child's "best interests" is ascertained by "an evaluation of the child's physical, intellectual, and moral well being." *In re Adoption of J.J.B.,* 119 N.M. 638, 644, 894 P.2d 994, 1010 (1995); *see also Lopez v. Lopez,* 97 N.M. 332, 335, 639 P.2d 1186, 1189 (1981) (well-being of child is key factor in determining visitation); *Rhinehart v. Nowlin,* 111 N.M. 319, 329, 805 P.2d 88, 98 (Ct.App.1990) (whether child visitation by stepmother should be continued following divorce governed by best interests of children); *In re J.K.,* 495 N.W.2d 108, 110 (Iowa 1993) (best interests of children include children's long-range as well as their immediate interests). Where a petition for grandparent visitation is challenged by the child's parents, the trial court should also consider whether it would be beneficial to appoint a guardian ad litem to represent the child in the face of conflicting family interests. *See* SCRA 1986, 1–017(C) (Repl.1992).

Mother argues that Grandmother has exhibited animosity toward her and that Grandmother's prior actions have sought to undermine Mother's parental authority. Mother also emphasizes that a parent's right to the care and custody of his or her child is constitutionally protected, and the state may not infringe on such right without a compelling reason. *In re Adoption of J.J.B.,* 117 N.M. 31, 36, 868 P.2d 1256, 1261 (Ct.App. 1993), *aff'd,* 119 N.M. 638, 894 P.2d 994

---

**1.** *See* Bostock, *supra,* at 347 n. 138, listing newly adopted features of this state's Grandparent's Visitation Privileges Act.

**2.** "Originally, grandparent visitation statutes were enacted to protect children from the emotional harm of abruptly ending meaningful grandparent-grandchild relationships during times of family crisis. As time has progressed, many state legislatures have broadened the scope of grandparent visitation statutes to allow visitation whenever it would be in 'the best interests of the child.'" Jackson, *supra,* at 576 (footnotes omitted).

(1995). A parent's fundamental right to raise his or her children, however, is secondary to the best interests and welfare of the child. *Ridenour*, 120 N.M. at 354–55, 901 P.2d at 772–73; *In re Adoption of Francisco A.*, 116 N.M. 708, 714, 866 P.2d 1175, 1181 (Ct.App. 1993); *see also Edington v. Edington*, 50 N.M. 349, 352, 176 P.2d 915, 917 (1947) (welfare of child is matter of primary concern, paramount to wishes of parents). The existence of animosity between a child's parents and the grandparents, although not conclusive, is a significant factor that must be considered in determining whether an award of visitation is in the best interests of the child. *See* § 40–9–2(G)(4); *see also* Jackson, *supra*, at 595. Similarly, the trial court must evaluate the effect, if any, such court-ordered visitation may have on the parent-child relationship.

In addition to the statutory factors enumerated in Section 40–9–2(G), other relevant factors relating to a request for grandparent visitation which the trial court may consider, include: (1) the love, affection, and other emotional ties which may exist between the grandparent and child; (2) the nature and quality of the grandparent-child relationship and the length of time that it has existed; (3) whether visitation will promote or disrupt the child's development; (4) the physical, emotional, mental, and social needs of the child; (5) the wishes and opinions of the parents; and (6) the willingness and ability of the grandparent to facilitate and encourage a close relationship among the parent and the child. *See* Jackson, *supra*, at 594–95.

Examination of the trial court's findings of fact and its order allowing grandparent visitation, insofar as they bear upon the criteria listed in Section 40–9–2(G), reveals that Grandmother had contact with A.H. on a few occasions until he was six months old, Grandmother's relationship with Mother is such that the parties have been ordered not to have any contact during visitation sessions, there was no prior grandparent time-sharing or visitation arrangements in place prior to the filing of Grandmother's petition, and "[a]t present [A.H.] has no relationship with the paternal side of his family."

In reviewing findings of fact adopted by the trial court, we recognize that the trial court has broad, but not unfettered, discretion in awarding visitation. *See Rhinehart*, 111 N.M. at 325, 805 P.2d at 94. Under our Grandparent's Visitation Privileges Act, it is an abuse of discretion for the trial court to grant an award of visitation absent an affirmative showing that such visitation is beneficial to the child and would be in furtherance of the child's best interests and welfare. Section 40–9–2(G).

Examining the record in the light most favorable to the decision entered below, our review of the record fails to disclose evidence specifically showing that Grandmother has satisfied the factors enumerated in Section 40–9–2(G). The 1993 revision of New Mexico's grandparent visitation statutes, among other things, specifically requires the trial court to assess the degree of prior interaction between the grandparent and the child, the prior interaction of the grandparent and each parent of the child, and the present relationship between the grandparent and each parent of the child. *See* § 40–9–2(G)(2)–(4). These statutory factors evidence a legislative intent to permit continued grandparent-child contact despite objections by a child's parents where there is a showing that a meaningful, prior relationship existed between the child and his or her grandparents. Evidence showing the length and quality of a prior relationship between Grandmother and A.H. here has not been shown. Additionally, even though the 1993 revision permitting grandparent visitation liberalized the law, it does require a petitioning grandparent or grandparents to present evidence indicating how such visitation will further the child's best interests. *See* § 40–9–2(G)(1).

According to the testimony of Grandmother and two of her witnesses, Grandmother has done an "excellent" job raising her four children, has never had problems taking care of other children, and gets along well with the children who ride the school bus she drives at work. Grandmother, however, concedes that A.H. does not know that she is his grandmother, that at the time of the hearing

she had not seen A.H. since September 1993, and that she has had no interaction with Mother since A.H. was six months old. The record fails to show facts indicating the existence of a prior, significant interaction with A.H., the existence of a present harmonious interaction with A.H.'s parents, that Grandmother has participated in any prior time-sharing or visitation arrangements involving A.H., or whether such visitation will significantly affect the present Mother-child relationship.

The Pennsylvania Superior Court in *Rigler* considered a case factually similar in part to that presented here. Pennsylvania, like New Mexico, requires that the trial court find grandparent visitation to be in the child's best interests, and that the grandparent has the burden of proof concerning this issue. *Rigler,* 660 A.2d at 115. In *Rigler* the parents of the child were never married and the father's parental rights were terminated. *Id.* at 112. The evidence also indicated that considerable antagonism existed between the mother and the paternal grandmother. *Id.* at 114. The appellate court affirmed the trial court's denial of visitation because there was no showing that grandparent visitation would be in the child's best interests, and the evidence indicated that such visitation, in fact, could interfere with the relationship between the mother and the child. *Id.* at 115–16.

 In New Mexico, in ruling on a petition for visitation filed pursuant to the Grandparent's Visitation Privileges Act, the trial court must consider, among other things, whether the child's interests are furthered by ordering visitation over the objections of the child's parents and whether court-ordered visitation will place the child in the center of family conflict. In announcing his ruling in the instant case, the trial judge stated that he would allow visitation because he did not want to keep A.H. from knowing the paternal side of his family. Although we, as did the trial court, entertain a natural sympathy for Grandmother and her desire to maintain family ties with her grandson, this factor alone will not suffice to satisfy the requirement that proof be presented indicating that visitation is in the best interests of

the child. *See Ridenour,* 120 N.M. at 356–57, 901 P.2d at 774–75 (no presumption exists that grandparent visitation is in child's best interests); *Santaniello v. Santaniello,* 18 Kan.App.2d 112, 850 P.2d 269, 271 (1992) (same). Our legislature adopted legislation permitting grandparent visitation rights conditioned on a showing that such visitation is in the best interests of the child. A predicate to obtaining court-ordered grandparent visitation requires an affirmative showing that it is in the child's best interests that such visitation be imposed. Section 40–9–2(G)(1). No such evidence exists on the present record.

## CONCLUSION

The order granting grandparent visitation is reversed. On remand the trial court should consider whether the provisions of Section 40–9–2(I) should be ordered.

IT IS SO ORDERED.

APODACA, C.J., and BLACK, J., concur.