2004-NMCA-017

87 P.3d 552

**Bernadette GUTIERREZ and Ricardo Gutierrez, Petitioners–Appellees,**

v.

**Melanie CONNICK and Richard Michael Gutierrez, Respondents–Appellants.**

**No. 23,601.**

Court of Appeals of New Mexico.

Dec. 11, 2003.

Bernadette Gutierrez, Ricardo Gutierrez, Los Lunas, NM, Pro Se Appellees.

David A. Standridge Jr., Standridge Law Firm, P.C., Albuquerque, NM, for Appellant Melanie Connick.

## OPINION

SUTIN, Judge.

{1} Melanie Connick (Mother) is the biological mother of Helena Alicea Connick–Gutierrez, born June 2000 (Child). Richard Michael Gutierrez (Father) is the biological father of Child. Mother and Father have never been married. Bernadette and Ricardo Gutierrez are Child's paternal grandparents (Grandparents). Mother appeals an order granting Grandparents visitation privileges. We reverse.

## BACKGROUND

{2} In August 2001, Grandparents filed a pro se petition for grandparent visitation, naming Mother as Respondent. No action involving dissolution of marriage, legal separation, or the existence of a parent and child relationship was pending. *See* NMSA 1978, § 40–9–2(A) (1999) (permitting a court to grant grandparent visitation "[i]n rendering a judgment of dissolution of marriage, legal separation or the existence of the parent and child relationship"). Mother filed a motion to dismiss, arguing that Grandparents met none of the requirements under Section 40–9–2 for court-ordered grandparent visitation.

{3} The district court took Mother's motion to dismiss under advisement and, although Father was not a party, the court ordered Father to file a petition for paternity. In addition, the court granted a limited amount of supervised visitation to Grandparents, pending further order of the court, simultaneously ordering the parties to work on their long-term relationship for the benefit of Child. When Father did not file a petition for paternity, Mother again moved to dismiss Grandparents' petition for visitation for lack of jurisdiction. The court granted that motion, dismissing Grandparents' petition and suspending visitation between Grandparents and Child.

{4} Grandparents then moved to reinstate the action and for leave to file an amended petition for grandparent visitation and for the issuance of summons to Father. The

court granted this motion, and Grandparents, now formally represented by counsel, filed an amended petition adding Father as a party and requesting that Father's paternity be established pursuant to NMSA 1978, § 40-11-7 (1986) of the Uniform Parentage Act, NMSA 1978, §§ 40-11-1 to -23 (1986, as amended through 2001) (Parentage Act). The amended petition asserted that Grandparents were interested parties as contemplated in Section 40-11-7(A).

{5} Mother then filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Her motion to dismiss asserted that Grandparents were not interested parties as contemplated by the Parentage Act and that despite the court's order that he do so, Father did not file a petition for paternity. Grandparents moved for entry of a default judgment against Father. Father filed an answer in which he did not deny paternity. The court denied Mother's motion to dismiss and determined that Father was the natural father of Child.

{6} After a hearing on the merits, the district court entered findings of fact and conclusions of law, and an order and judgment. The court determined that Grandparents had standing to file an action to establish a parent and child relationship between Father and Child because they were interested parties within the meaning of Section 40-11-7(A), that a parent and child relationship between Father and Child existed, and that the court had jurisdiction over the parties and the subject matter.

{7} The court made the following findings of fact, among others, none of which are attacked by any party, and all of which are binding on this Court. *Stueber v. Pickard*, 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991). We are deferential to the court's findings of fact, but we review conclusions of law de novo and may draw our own conclusions of law. *See Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996). For Grandparents to assert visitation rights, Grandparents were required to file an action to establish the existence of a parent and child relationship between Father and Child. Father was giv-

en notice of the hearing and did not appear. Child resided with Mother since birth and Mother provided all the support for Child since birth. Father had been incarcerated for the greater part of Child's life, but resided with Mother and Child prior to his incarceration and after he was released from incarceration in July 2002. Mother and Father have a very unstable relationship and are attempting to work out their differences. No evidence was presented regarding the prior interaction between Grandparents and Father although, presently, Grandparents and Father appear to have a satisfactory relationship. Very little interaction existed between Grandparents and Child, with no significant attachment between them and no time-sharing or visitation arrangements in place prior to Grandparents' petition. The prior interaction and current relationship between Grandparents and Mother was strained and conflicted and, presently, full of animosity. More particularly, Grandparents called Mother derogatory names, intimidated and threatened Mother, threatened to take Child from Mother and leave the country, and have not respected Mother's wishes and opinions regarding the care of Child. Mother's concerns about Child's safety and about attempts by Grandparents to alienate Child from her were therefore reasonable. Grandparents do not appear to be willing or able to promote a close relationship between Mother and Child. Mother's health has suffered as a result of the continued conflict with Grandparents and her concern for Child's safety.

{8} The district court also found that unsupervised visitation was likely to disrupt Child's development and was currently not in the best interest of Child, but that it would ultimately be in Child's best interest to have a relationship with Grandparents. The court found that supervised visitation would enable Grandparents to have contact with Child, yet ensure the safety of Child, and address Mother's concerns.

{9} Based on a finding that it was in the best interest of Child, the district court awarded supervised grandparent visitation from 1:00 p.m. to 3:00 p.m. on the first Saturday of each month at a specific neutral location not to conflict with prior established

visitation or time-sharing privileges or with Child's education. The court stated in its finding of fact that Grandparents were encouraged to develop a positive relationship with Mother and to respect her concerns, and that all parties were encouraged to put their differences behind them and to work together for the benefit of Child. The court also stated that it would modify the visitation schedule upon a showing of a material and substantial change in circumstances.

{10} Mother appeals, contending (1) that the district court lacked subject matter jurisdiction to grant grandparent visitation, in that Grandparents lacked standing, and (2) that Grandparents failed to meet their burden of proof to obtain visitation privileges. Grandparents' two-page, pro se answer brief asserts facts not of record, contains no citation to the record or legal authority, and fails to respond to any of Mother's arguments. It asks this Court to affirm because "[t]he love of a grandparent should never be denied to a child," no visitation "would do psychological and emotional harm to [Child]," and "[Child] and grandparents need each other as part of the special bond already established."

## DISCUSSION

### I. Standing of Grandparents to Seek Paternity Determination

 {11} We review issues of jurisdiction and standing de novo when the facts are undisputed. *See Martinez v. Segovia,* 2003–NMCA–023, ¶ 9, 133 N.M. 240, 62 P.3d 331 ("The issues of lack of jurisdiction and interpretation and application of law and procedure are legal issues we review de novo."); *MPC Ltd. v. N.M. Taxation & Revenue Dep't,* 2003–NMCA–021, ¶ 11, 133 N.M. 217, 62 P.3d 308 ("Findings that are not directly attacked are deemed conclusive and are binding on appeal."); *see also Williams v. Williams,* 2002–NMCA–074, ¶ 8, 132 N.M. 445, 50 P.3d 194 (stating that appeal on constitutional issue as to grandparent visitation privileges raised questions of law to be reviewed de novo).

{12} Mother contends the court lacked jurisdiction, asserting that Grandparents were not interested parties under Section 40–11–7(A) and therefore lacked standing to establish a parent-child relationship between Father and Child. Section 40–11–7(A) states: "Any interested party may bring an action for the purpose of determining the existence or nonexistence of the parent and child relationship." Mother argues that "interested party" does not include grandparents who seek to establish paternity solely to open a door for grandparent visitation under Section 40–9–2.

{13} In Mother's view, allowing Grandparents visitation privileges thwarts the purpose of the Parentage Act. The parent and child relationship, Mother points out, is defined as a "legal relationship . . . incident to which the law confers or imposes rights, privileges, duties and obligations." § 40–11–2. Mother argues that nothing in the Parentage Act indicates a purpose to allow Grandparents to establish a parent-child relationship to gain visitation. *See State ex rel. Human Servs. Dep't v. Aguirre,* 110 N.M. 528, 530, 797 P.2d 317, 319 (Ct.App.1990) ("[T]his court has held that the primary purpose of paternity proceedings is to insure that the putative father meets his obligation to help support the child."). In addition to *Aguirre,* Mother relies on several attenuated New Mexico and out-of-state cases that, according to Mother, require a person to have more of a connection with the outcome of the case than do Grandparents. Mother further contends that it would be contrary to public policy to permit grandparent visitation when the family unit exists and Mother and Father work out their own issues, and when Grandparents have no close bond or financial relationship with Child. Based on her policy argument and the cases cited, Mother requests this Court to narrowly define "interested parties" to bar Grandparents from beginning the process of seeking visitation privileges under Section 40–11–7(A) because Grandparents have neither a financial stake in the establishment of a parent-child relationship, nor a close relationship "necessitating an interest" in the establishment of a parent-child relationship.

{14} We do not accept Mother's lack of standing contention. As the district court determined, for the parent of a putative father to obtain grandparent visitation privileges, a determination of a parent-child rela-

tionship must be made linking the putative father as a parent of the child. *See* § 40–9–2(A). The parent-child relationship established must be one "incident to which the law confers or imposes rights, privileges, duties and obligations." § 40–11–2. Incident to a parent-child relationship, the law confers grandparents certain visitation privileges, *see* § 40–9–2, assuming the grandparents meet certain requirements. *See* § 40–9–2(G). We hold that a putative grandparent has standing as an interested party under Section 40–11–7(A) to bring an action to establish a parent-child relationship for the purpose of establishing the grandparent as either the maternal or paternal grandparent of a child in order to obtain visitation privileges under Section 40–9–2.

## II. Discretion in Awarding Grandparents Visitation Privileges

▉ {15} We have little doubt that, more often than not, it is in the best interest of a child to have an ongoing beneficial relationship with grandparents. Nor do we doubt that, in certain circumstances, it might be beneficial to experiment with grandparent visitation through court-ordered, limited supervised visitation, even in the face of a parent's objection. However, without statutory permission, a grandparent does not have a right to court-ordered visitation with his or her grandchild. No grandparent visitation right existed at common law. *See Lucero v. Hart,* 120 N.M. 794, 799, 907 P.2d 198, 203 (Ct.App.1995).

▉ {16} Furthermore, even if statutorily permitted, grandparent visitation privileges are circumscribed by constitutional limitations, in that parents have a fundamental liberty right to make decisions concerning the care, custody, and control of their children, a right that is protected under the Fourteenth Amendment's Due Process Clause. *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *see also Williams,* 2002–NMCA–074, ¶¶ 11–18,

132 N.M. 445, 50 P.3d 194 (discussing *Troxel*). "[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel,* 530 U.S. at 72–73, 120 S.Ct. 2054.

▉ {17} Thus, the starting point in evaluating grandparent visitation privileges is neither a presumption in favor of grandparent visitation, nor casting the burden on a fit custodial parent to disprove that visitation would be in the best interest of the child. *See id.* at 68, 71, 120 S.Ct. 2054. Rather, the question is whether the grandparents have presented sufficient evidence to relax the concern about infringement on a fit parent's fundamental right to make decisions regarding the care, custody, and control of his or her child, a decision that is to be given material weight by the court. *See id.* at 71–72, 120 S.Ct. 2054.

{18} Section 40–9–2(A) permits a court to grant reasonable visitation privileges to a grandparent. Subsections B, C, D, E, and F of Section 40–9–2 cover the following circumstances for grandparent visitation: instances in which one or both parents are deceased, § 40–9–2(B); a minor child resided with a grandparent for a certain period and the child was removed from the grandparent's home, § 40–9–2(C), (D); and the child has been or is being adopted by certain persons, § 40–9–2(E), (F).[1] Section 40–9–2(G) sets out the evidentiary factors a court must consider in evaluating whether to grant grandparent visitation. This provision requires the court to assess certain factors when considering grandparent visitation, as follows:

(1) any factors relevant to the best interests of the child;

(2) the prior interaction between the grandparent and the child;

(3) the prior interaction between the grandparent and each parent of the child;

---

1. No party raises, and we do not address, whether visitation privileges can be granted only under the specific circumstances stated in Subsections (B) to (F). *See Williams,* 2002–NMCA–074, ¶ 9, 132 N.M. 445, 50 P.3d 194 (stating that the Visitation Act "allows grandparents to petition

the court for visitation under a limited number of specific circumstances, such as divorce, the death of a parent, or termination of parental rights," although no issue was raised in the case regarding whether visitation privileges could be granted solely under such circumstances).

(4) the present relationship between the grandparent and each parent of the child;

(5) time-sharing or visitation arrangements that were in place prior to filing of the petition;

(6) the effect the visitation with the grandparent will have on the child;

(7) if the grandparent has any prior convictions for physical, emotional or sexual abuse or neglect; and

(8) if the grandparent has previously been a full-time caretaker for the child for a significant period.

*Id.*

■ {19} The district court has "broad, but not unfettered, discretion in awarding visitation." *Lucero,* 120 N.M. at 800, 907 P.2d at 204. We review a court's decision granting grandparent visitation for abuse of discretion where a parent asserts the granting of visitation was erroneous because it lacked "an affirmative showing that such visitation is beneficial to the child and would be in furtherance of the child's best interests and welfare." *Id.* In doing so, we examine "the record in the light most favorable to the decision entered below." *Id.* Under our often repeated abuse of discretion standard, a court abuses its discretion when its "ruling is clearly against logic and the effect of facts and circumstances." *See Ridenour v. Ridenour,* 120 N.M. 352, 356, 901 P.2d 770, 774 (Ct.App.1995) (citing, in connection with the court's application of the grandparent visitation statute, a New Mexico custody-case test as to abuse of discretion when the court modifies a custody arrangement) (internal quotations marks and citation omitted); *see also Sims v. Sims,* 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153 ("An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case.").

Where the court's discretion is fact-based, we must look at the facts relied on by the trial court as a basis for the exercise of its discretion, to determine if these facts are supported by substantial evidence. If the facts essential to the trial court's judgment are not established by substantial evidence in the record, we will necessarily find an abuse of discretion.

*Apodaca v. AAA Gas Co.,* 2003–NMCA–085, ¶ 60, 134 N.M. 77, 73 P.3d 215 (internal quotation marks and citations omitted), *cert. granted,* 133 N.M. 771, 70 P.3d 761 (May 28, 2003).

{20} In the present case, to support the district court's grant of grandparent visitation, Grandparents must at a minimum have presented "evidence specifically showing that [they] satisfied the factors enumerated in Section 40–9–2(G)," *Lucero,* 120 N.M. at 800, 907 P.2d at 204, to an extent that would permit the district court, exercising reasonable discretion, to ultimately determine the presence of enough factors to allow visitation under the statute.

{21} We agree with Mother that Grandparents failed to meet their burden under Section 40–9–2(G) to show factors that could support grandparent visitation under Section 40–9–2(A). Except for the fact that Grandparents are the paternal grandparents of Child, the evidence is much too thin to support grandparent visitation. The only specific factors remotely supportive of the court's decision are that the parents have a very unstable relationship, Grandparents and Father appear to have a satisfactory relationship, and the court's view that it would be in Child's best interest to have a relationship with Grandparents. Nothing presented at the time of the hearing and entry of the court's findings indicates anything else positive in Grandparents' favor. Grandparents did not show any meaningful, prior relationship existing between them and Child. *See Lucero,* 120 N.M. at 800, 907 P.2d at 204 (stating that the "statutory factors evidence a legislative intent to permit continued grandparent-child contact despite objections by a child's parents where there is a showing that a meaningful, prior relationship existed"); *see also Williams,* 2002–NMCA–074, ¶ 24, 132 N.M. 445, 50 P.3d 194 (noting that specific support for visitation, including "the documented need to nurture the prior relationship between Child and Grandparents," was notably absent in *Troxel* ). The court made no finding indicating that visitation would further Child's best interest. *See Lucero,* 120 N.M. at 800, 907 P.2d at 204 (stating that Section 40–9–2(G) required "evidence indicat-

ing how such visitation will further the child's best interests").

{22} It is noteworthy that in reversing the district court's grant of grandparent visitation in *Lucero*, this Court described "a case factually similar in part," *Rigler v. Treen*, 442 Pa.Super. 533, 660 A.2d 111 (1995), as follows:

In *Rigler* the parents of the child were never married and the father's parental rights were terminated. The evidence also indicated that considerable antagonism existed between the mother and the paternal grandmother. The appellate court affirmed the trial court's denial of visitation because there was no showing that grandparent visitation would be in the child's best interests, and the evidence indicated that such visitation, in fact, could interfere with the relationship between the mother and the child.

*Lucero*, 120 N.M. at 801, 907 P.2d at 205 (citations omitted). *Lucero* and *Rigler* are clear pathways to our decision in the present case.

{23} The most that can be gleaned from or read into the court's findings in the present case is that the court appeared to believe that supervised visitation would be of little risk and might, if Grandparents minded themselves and Grandparents and Mother could get along, be in the best interest of Child. Grandparents have not made an affirmative showing that it is in Child's best interest that visitation be imposed, as required under Section 40–9–2(G)(1). The overwhelming evidence is against such visitation.

{24} The court appears to have attempted to come within the statute by permitting only supervised visitation at monthly intervals for short time periods, thus limiting any risk of harm, yet giving Child the chance to know and appreciate Grandparents. While such a conceivably low-risk contact experiment might do little harm and may benefit Child, the law does not permit or require such visitation in the absence of any substantial evidence to support visitation under the factors listed in Section 40–9–2(G). *See Williams*, 2002–NMCA–074, ¶ 14, 132 N.M. 445, 50 P.3d 194 ("The visitation order lacked the kind of special circumstances that are constitutionally necessary to justify state interference in a parent's right to determine the best interests of his or her child."). The order allowing visitation in this case is exploratory, causing it to be beyond the pale of the discretion permitted under a Section 40–9–2 grant of visitation. Grandparents did not establish a right under Section 40–9–2 to visitation, and the district court erred in granting visitation.

**CONCLUSION**

{25} We reverse the district court's grandparent visitation order.

{26} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CYNTHIA A. FRY, Judges.