2004-NMCA-102

96 P.3d 1186

**Josephine DEEM, Petitioner–Appellant,**

v.

**Raymond M. LOBATO and Susan Deem Lobato, Respondents–Appellees.**

No. 23,089.

Court of Appeals of New Mexico.

June 23, 2004.

Certiorari Denied, No. 28,802, Aug. 4, 2004.

Mary Jo Snyder, Santa Fe, for Appellant.

Robert E. Tangora, Robert E. Tangora, L.L.C., Santa Fe, for Appellee Raymond M. Lobato.

Susan Deem Lobato, Santa Fe, Pro Se Appellee.

## OPINION

ROBINSON, J.

{1} Petitioner Josephine Deem (Grandmother) appeals from the district court order terminating visitation with her granddaughter (Child). *See* Grandparent's Visitation Privileges Act (the GVA), NMSA 1978, § 40–9–1 to –4 (1993, as amended through 1999). Relying upon *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion), the district court determined that a change in the joint custody arrangement between Child's parents to sole custody with Father provided a sufficient basis to terminate visitation. On appeal,

Grandmother raises the following arguments: the district court misapplied the United States Supreme Court decision in *Troxel;* the change in the custody arrangement did not constitute a showing of good cause under Section 40–9–3(A) of the GVA; and the district court erred when it terminated the existing court-ordered visitation without an evidentiary hearing. We reverse and remand with instructions.

**BACKGROUND**

{2} Grandmother is the maternal grandmother of Child. Parents (Mother and Father) of Child were divorced in August 1995 when Child was one year old. The parenting plan agreed upon at the time of the divorce granted joint legal custody to Mother and Father, with Father having primary physical custody of Child. In the first few years of Child's life, Grandmother developed a good relationship with Child, and, after the divorce, Mother's visitation with Child took place at Grandmother's home. Subsequently, however, relations between Grandmother and Father became strained and her visits with Child all but ended. In December 1998, Grandmother filed a petition seeking regular visitation with Child to which Father objected.

{3} On February 7 and 11, 2000, after Father requested a continuance of the trial, District Court Judge James Hall conducted a hearing on temporary visitation privileges while the trial on the merits of the visitation petition was pending. *See* Section 40–9–2(H). At the conclusion, the district court determined that it was in the best interests of Child to have visitation with Grandmother, and temporary visitation was ordered pending a full hearing. The court stated that the interim visits would also serve to provide information to the court for the hearing on the merits. In response to Father's expressed concerns, the district court imposed several restrictions on the visitation, including that it be supervised, that the supervisor report to the court on the visits, that Grandmother's son and daughter not be present, and that Father's sister or brother could attend the visits as observers.

{4} On May 3 and 8, 2000, Judge Hall conducted a trial on the merits of Grandmother's petition for visitation. After considering the factors set forth in Section 40–9–2(G) and giving special weight to the parents' wishes under *Troxel*, Judge Hall determined that it was in Child's "best interests to have regular, limited visitation with [Grandmother] under certain conditions." Again, in response to Father's concerns, the court set limitations on the visitation, including continuing the supervised visitation, prohibiting Grandmother from giving Child any gifts during visitation, prohibiting Grandmother's son and daughter from being present, and allowing Father to provide an additional observer at visitation. Judge Hall entered his findings of fact and conclusions of law on July 24, 2000. None of the findings of fact was challenged by either party. *See Stueber v. Pickard,* 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991) (stating that the unchallenged finding of the district court was binding on appeal).

{5} On October 2, 2001, Mother and Father entered into a stipulated order in the divorce case giving Father sole legal and physical custody of Child "until such time as [Mother] petitions this court for a modification thereof." The order had been signed by Mother and Father and their respective divorce attorneys and also stated "that this order shall have no adverse effects on the association rights of [Mother's] family with [Child]." However, when the order was submitted to the district court, Judge Carol Vigil presiding, the court deleted that provision of the stipulated order on jurisdictional grounds because the grandparent visitation case was before Judge Hall. With that modified order, Father then moved within two weeks to terminate Grandmother's visitation, claiming that as the sole legal custodian of Child he was now entitled to the presumption that his decision regarding visitation was in Child's best interests. Grandmother responded that this single change in circumstance between the parents regarding legal custody was insufficient under the GVA to terminate the court-ordered visitation.

{6} A hearing on Father's motion was set with an initial time allocation of one and one-half hours. In support of continued visitation, Grandmother subpoenaed three wit-

nesses: Mother, Mother's attorney in the divorce proceedings, and the supervisor of the visits between Grandmother and Child. When the hearing was called, however, the court had set aside only thirty or forty minutes to hear the motion. Grandmother reminded the court of the amount of time that had initially been scheduled for the hearing and pointed out that she had three witnesses prepared to testify. The district court, with Judge Daniel Sanchez now presiding on rotation, did not allow Grandmother to call the witnesses and permitted only a proffer of their testimony by Grandmother's attorney. Mother would have testified that she did not intend for the change in custody to affect Grandmother's visitation and that had been one of the conditions for giving sole custody to Father. Her attorney would have testified that all parties had signed off on that condition in the stipulated order before Judge Vigil struck that provision from the order. The visitation supervisor would have testified about what she observed during the visits between Grandmother and Child and also that she thought the visits were good for Child. Grandmother argued to the court that Judge Hall had previously conducted a full hearing on whether visitation would be in the best interests of Child and applied a *Troxel* analysis to the facts of the case before granting visitation. Therefore, she argued, Father now had the burden under the GVA to come forward with evidence that there was a change in the best interests of Child after the court had awarded visitation.

{7} After hearing the arguments of counsel and reviewing the stipulated order regarding custody, the court summarily ruled that *Troxel* gave Father, as the sole custodial parent, the discretion to terminate the visitation. Under *Troxel*, the court opined, Father "as a fit parent and sole legal custodian" was "entitled to a presumption that his decision not to allow visitation between his child and [Grandmother] is in the best interests of his child." The district court also found that the change in legal custody was a material change in circumstances. The court then granted the motion to terminate Grandmother's visitation effective immediately even though a visit with Child was scheduled for later that day. This appeal ensued.

## DISCUSSION

{8} Grandmother argues that the district court's misapprehension of *Troxel* led to the erroneous termination of the previously ordered visitation with Child. She argues that the court erred by not permitting her to present evidence to rebut the presumption stated in *Troxel* that a parent's decision with regard to grandparent visitation is made in a child's best interest. Finally, she contends that the court incorrectly concluded that the change in Child's legal custody provided a sufficient basis to terminate the visitation. Grandmother contends that under the GVA a change in legal custody between the parents does not by itself constitute good cause for modifying the original court order granting visitation. *See* § 40-9-3. "This appeal raises questions of law, which we review de novo." *Williams v. Williams,* 2002–NMCA–074, ¶ 8, 132 N.M. 445, 50 P.3d 194.

{9} Father responds that the sole basis of Judge Hall's decision to grant visitation was that the district court felt that it had to make the decision because Mother and Father disagreed over visitation by Grandmother. Father argued below that under *Troxel* he was entitled to a presumption that his decision not to allow visitation was in the best interests of Child. He stated that he continued to oppose any court-ordered visitation between Child and Grandmother, and that, as sole legal and physical custodian, he alone had the discretion to make the determination regarding visitation. On appeal, he argues that the district court, relying on *Troxel,* correctly deferred to Father's decision regarding visitation with Grandmother. He also contends that because Mother relinquished joint custody, her wishes regarding with whom Child may associate "no longer [have] legal significance."

### Troxel v. Granville

{10} In *Troxel,* the United States Supreme Court held in a plurality opinion that a Washington state statute authorizing nonparental visitation with a child, as applied to the facts of that case, unconstitutionally infringed on the due process right of the mother to make decisions concerning the care,

custody, and control of her children. *Troxel,* 530 U.S. at 66–67, 75, 120 S.Ct. 2054. The Supreme Court articulated several concerns raised by the case. The first concern was the "breathtakingly broad" nature of the Washington statute. *Id.* at 67, 120 S.Ct. 2054. The statute allowed any third party seeking visitation to bring any decision by parents concerning visitation with their children to a state court for review. *Id.* Second, the Supreme Court noted, "[t]he problem here is not that the [trial court] intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests." *Id.* at 69, 120 S.Ct. 2054. Third, the Supreme Court was concerned that the trial court had "placed on [the mother], the fit custodial parent, the burden of *disproving* that visitation would be in the best interest of her daughters." *Id.* The Supreme Court stated this decisional framework "directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.* Finally, the Court noted that the mother had not denied visitation entirely to the grandparents. *Id.* at 71, 120 S.Ct. 2054. The dispute had not been over whether visitation should be allowed, but rather over how much visitation there should be. *Id.* The combination of these factors led the plurality to conclude that the visitation order in that case was unconstitutional. *Id.* at 72, 120 S.Ct. 2054.

{11} But the Court in *Troxel* specifically declined to find either the statute in question or grandparent visitation statutes in general to be unconstitutional. *Id.* at 73, 120 S.Ct. 2054. Observing "the changing realities of the American family," *id.* at 64, 120 S.Ct. 2054 and that, in response to those changes, all fifty states had enacted grandparent visitation statutes, *id.* at 73 n. *, 120 S.Ct. 2054 the plurality concluded that "[b]ecause much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter," *id.* at 73, 120 S.Ct. 2054.

### Grandparent's Visitation Privileges Act

{12} In New Mexico, grandparent visitation privileges are conferred by statute. "No grandparent visitation right existed at common law." *Gutierrez v. Connick,* 2004–NMCA–017, ¶ 15, 135 N.M. 272, 87 P.3d 552 (relying on *Lucero v. Hart,* 120 N.M. 794, 799, 907 P.2d 198, 203 (Ct.App.1995)). In New Mexico, the GVA states that in certain defined circumstances a "district court may grant reasonable visitation privileges to a grandparent of a minor child." *See* § 40–9–2(A). In this case, Grandmother petitioned for visitation under Section 40–9–2(A) which applies in the event of a dissolution of marriage, legal separation, or the establishment of a parent-child relationship. Factors to be assessed by the district court when considering whether to grant visitation privileges to a grandparent include the following:

(1) any factors relevant to the best interests of the child;

(2) the prior interaction between the grandparent and the child;

(3) the prior interaction between the grandparent and each parent of the child;

(4) the present relationship between the grandparent and each parent of the child;

(5) time-sharing or visitation arrangements that were in place prior to filing of the petition;

(6) the effect the visitation with the grandparent will have on the child;

(7) if the grandparent has any prior convictions for physical, emotional or sexual abuse or neglect; and

(8) if the grandparent has previously been a full-time caretaker for the child for a significant period.

Section 40–9–2(G). "[G]randparents, in seeking application of the GVA, have the burden to show that visitation is appropriate." *Ridenour v. Ridenour,* 120 N.M. 352, 356–57, 901 P.2d 770, 774–75 (Ct.App.1995); *Williams,* 2002–NMCA–074, ¶ 16, 132 N.M. 445, 50 P.3d 194. Under the GVA, grandparents must first meet the threshold requirements listed in Section 40–9–2(A)–(F) to be entitled to pursue visitation and then must present evidence relevant to the factors listed in Section 40–9–2(G)(1)–(5). *Ridenour,* 120 N.M. at 356, 901 P.2d at 774.

{13} Further, in *Lucero,* this Court recognized additional factors which may be taken into account by the district court when considering a petition for grandparent visitation privileges, which included:

(1) the love, affection, and other emotional ties which may exist between the grandparent and child; (2) the nature and quality of the grandparent-child relationship and the length of time that it has existed; (3) whether visitation will promote or disrupt the child's development; (4) the physical, emotional, mental, and social needs of the child; (5) the wishes and opinions of the parents; and (6) the willingness and ability of the grandparent to facilitate and encourage a close relationship among the parent and the child.

*Lucero,* 120 N.M. at 800, 907 P.2d at 204; *accord Williams,* 2002–NMCA–074, ¶ 9, 132 N.M. 445, 50 P.3d 194.

{14} This Court analyzed the GVA in light of the *Troxel* opinion in *Williams,* 2002–NMCA–074, 132 N.M. 445, 50 P.3d 194. The parents in *Williams* had challenged the award of the grandparent visitation, arguing that it was a violation of their rights and that the district court had been "constitutionally required to defer to their opinion." *Id.* ¶ 8. They also argued that the district court had not given special weight to their opposition to grandparent visitation. *Id.* ¶ 15. After a careful comparison of the parents' case to *Troxel,* this Court affirmed the award of grandparent visitation, concluding that the district court had given "appropriate weight to the wishes of Parents and did its best to accommodate those wishes in fashioning its visitation order." *Id.* ¶ 24. In arriving at this conclusion, we stated the following:

We agree with Parents that, as a general proposition, *Troxel* does require courts to give special consideration to the wishes of parents, and appropriately so. However, we do not read *Troxel* as giving parents the ultimate veto on visitation in every instance. *Troxel* may have altered, but it did not eradicate, the kind of balancing process that normally occurs in visitation decisions.

*Id.* ¶ 23. Similarly, in this case, Father argued that Grandmother's visitation should be terminated because he was now the sole legal custodian of Child and did not want visitation between the two.

{15} Section 40–9–3(A) of the GVA permits the district court to "modify the privileges or order [granting visitation privileges] upon a showing of good cause by any interested person." In this case, the court determined that the change of Child's legal custody constituted "a material change of circumstance." Grandmother argued that the change in the custody arrangement between Mother and Father was not by itself sufficient to constitute "good cause shown" under the GVA for terminating the original visitation order. In this case, she pointed out, Father had always been the de facto sole custodian of Child, and Judge Hall had considered that as one of the factors in granting visitation.

{16} This Court has previously held that grandparent visitation privileges are not derivative of the rights of the parents but rather exist independently under the GVA. "Grandparent visitation rights are derived from statute and are not contingent on the continuation of the parent-child legal relationship." *Lucero,* 120 N.M. at 798, 907 P.2d at 202 (quoted authority and quotation marks omitted); *see also Ridenour,* 120 N.M. at 357, 901 P.2d at 775. In *Lucero,* this Court held that the trial court, upon the proper showing, "could authorize grandparent visitation even though Grandmother's son had relinquished his parental rights" to permit stepparent adoption. 120 N.M. at 798, 907 P.2d at 202; *see* § 40–9–2(F). Under the GVA, grandparents may petition for visitation in other circumstances including when the grandchild has been adopted, Section 40–9–2(E), and when one or both parents have died, Section 40–9–2(B).

{17} There is nothing in *Troxel* or the resulting case law to suggest that the Supreme Court considered the presumption that a fit parent acts in the best interests of his or her child to be other than a rebuttable presumption. *See Troxel,* 530 U.S. at 87, 120 S.Ct. 2054 (Stevens, J. dissenting); *accord McGovern v. McGovern,* 201 Ariz. 172, 33 P.3d 506, 511 (Ct.App.2001); *Fenn v. Sher-*

*riff*, 109 Cal.App.4th 1466, 1 Cal.Rptr.3d 185, 195 & n. 4 (2003); *Crafton v. Gibson*, 752 N.E.2d 78, 96–97, 98 (Ind.Ct.App.2001); *Herrick v. Wain*, 154 Md.App. 222, 838 A.2d 1263, 1273 (Ct.Spec.App.2003); *Blakely v. Blakely*, 83 S.W.3d 537, 545 (Mo.2002); *Glidden v. Conley*, 820 A.2d 197, 204–05 (Vt. 2003).

■ {18}  As this Court has stated, the presumption does not create a "bright-line test for the consideration of parental rights in the visitation context" that would give parents the "ultimate veto on visitation in every instance." *Williams*, 2002–NMCA–074, ¶¶ 16, 23, 132 N.M. 445, 50 P.3d 194; *see also Herrick*, 838 A.2d at 1273 ("If the custodial parent's preference were absolute, the need for a grandparent visitation statute would be obviated, for a parent could deny visitation without recourse."). The presumption simply alters the weighing process to give special weight to the wishes of the parents. *Williams*, 2002–NMCA–074, ¶ 23, 132 N.M. 445, 50 P.3d 194. The district court must still engage in a fact-specific analysis as it weighs the factors set forth in the GVA. Judge Hall, after a four day trial, had crafted a resolution that considered the factors defined in the GVA and our case law, as well as giving special weight to the parents' wishes under *Troxel*. In this case, there was already a court order in place granting Grandmother visitation. Because Father was attempting to modify that order, he had the burden of establishing good cause for that modification under Section 40–9–3(A). The court relied on the language in *Troxel* that "there is a presumption that fit parents act in the best interests of their children," 530 U.S. at 68, 120 S.Ct. 2054 to summarily terminate the visitation between Grandmother and Child without allowing Grandmother the opportunity to rebut that presumption. However, *Troxel* does not shift the burden away from a parent who seeks to modify an existing order granting grandparent visitation. Consequently, the district court erred when it perfunctorily deferred to Father in the matter of visitation. *See Fenn*, 1 Cal.Rptr.3d at 195 ("Giving the parent's determination 'special weight' is different than insulating the parent's determination from any court intervention whatsoever.").

## Additional Issues on Appeal

{19}  Father raises two arguments on appeal. First, he claims that after *Troxel* the GVA on its face is unconstitutional and, second, that in *Williams* this Court violated the separation of powers between the legislature and the judiciary. Father's constitutional claim is that *Troxel* requires a court to give special weight to the wishes of the parents, while the GVA does not require the court to do so. He acknowledges that *Lucero*, in listing additional factors for consideration, stated that a court "may consider" the parents' wishes but contends that this language falls short because it is not mandatory. *See Lucero*, 120 N.M. at 800, 907 P.2d at 204.

{20}  New Mexico has adopted certain rules of statutory construction for determining the constitutionality of a statute. *City of Farmington v. Fawcett*, 114 N.M. 537, 540, 843 P.2d 839, 842 (Ct.App.1992). A reviewing court begins its inquiry with a presumption that a statute is valid. *City of Albuquerque v. Jones*, 87 N.M. 486, 488, 535 P.2d 1337, 1339 (1975); *accord* 2A Norman J. Singer, Sutherland Statutory Construction § 45.11 (6th ed.2000). "A court must uphold a statute unless satisfied beyond a reasonable doubt that the legislature exceeded the bounds of the constitution in enacting it." *State ex rel. Pub. Employees Ret. Ass'n v. Longacre*, 2002–NMSC–033, ¶ 10, 133 N.M. 20, 59 P.3d 500. "[A]ll doubts as to its constitutionality" must be resolved "in favor of the validity of the law." *Gruschus v. Bureau of Revenue*, 74 N.M. 775, 777, 399 P.2d 105, 106 (1965). A party challenging the constitutionality of a statute "has the burden of establishing its invalidity." *City of Albuquerque*, 87 N.M. at 488, 535 P.2d at 1339. That burden has not been met in this case.

■ {21}  Contrary to Father's contentions, *Troxel* does not mandate a determination that the GVA is facially unconstitutional. *Troxel* does not prohibit judicial intervention when a parent refuses grandparent visitation, but does require that a court accord "some special weight to the parent's own determination" when applying a nonparental visitation statute. 530 U.S. at 70, 120 S.Ct. 2054. The

GVA is capable of, and has been, interpreted to accord deference to the parents wishes, although the statute itself does not specifically require such deference. *See, e.g., Connick,* 2004–NMCA–017, ¶ 17, 135 N.M. 272, 87 P.3d 552; *Williams,* 2002–NMCA–074, ¶ 21–24, 132 N.M. 445, 50 P.3d 194; *Ridenour,* 120 N.M. at 354, 901 P.2d at 772. We note that the language of the GVA is more narrowly drafted than that of the Washington statute at issue in *Troxel.* If the Supreme Court did not conclude that the "breathtakingly broad" Washington statute was invalid on its face, then it is reasonable for this Court to conclude that GVA is not unconstitutional on its face. Further, in *Troxel* the Supreme Court stated that it would be hesitant to hold specific nonparental visitation statutes unconstitutional per se. 530 U.S. at 73, 120 S.Ct. 2054. Rather, the Supreme Court, agreeing with Justice Kennedy in his dissent, stated that "the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied." *Id.*

{22} Father also contends that this Court violated the separation of powers between the legislature and the judiciary in *Williams.* As we understand Father's argument, he is claiming that the *Williams* Court added parental fitness as a factor to be considered under the GVA. Father appears to misapprehend the discussion in *Williams. See* 2002–NMCA–074, ¶¶ 25–28, 132 N.M. 445, 50 P.3d 194. The parents in that case, not this Court, argued that *Troxel,* not the GVA, required a finding by the district court of parental unfitness before grandparent visitation could be granted against their wishes. *Id.* ¶ 25. Without such a finding, the parents argued, the district court "was constitutionally required to defer to their opinion." *Id.* ¶ 8. This Court concluded that, as a matter of law, that *Troxel* did not impose such a requirement and rejected parents' argument. *Id.* ¶ 25.

CONCLUSION

{23} We reverse the district court's order terminating Grandmother's visitation. Mindful of the time that has passed since the termination order was granted, we remand to the district court for an evidentiary hearing.

In the interest of judicial economy, given the history of this case and the fact-specific nature of the inquiry, we remand the case to the original presiding judge, Judge Hall, to determine whether, at the present time and as circumstances now exist, it would be in Child's best interests to continue visitation with Grandmother and whether a guardian ad litem should be appointed for Child. *See Lucero,* 120 N.M. at 799, 907 P.2d at 203 (stating that when there is a parental challenge to grandparent visitation, the court "should also consider whether it would be beneficial to appoint a guardian ad litem to represent the child in the face of conflicting interests").

{24} **IT IS SO ORDERED.**

ALARID and KENNEDY, JJ., concur.