2008-NMCA-007

176 P.3d 324

**STATE of New Mexico, ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT, Petitioner–Appellee,**

v.

**SENAIDA C., Respondent–Appellant,**

and

**In the Matter of Isaiah C., a child.**

No. 26,545.

Court of Appeals of New Mexico.

Nov. 5, 2007.

New Mexico Children, Youth & Families Dep't, Rebecca J. Liggett, Children's Court Attorney, Santa Fe, NM, for Appellee.

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} In this case, we are asked to determine the extent of a grandparent's visitation rights when the child's mother relinquishes parental rights and consents to a closed adoption. Grandmother appeals from an order of dismissal, dismissing her claims for visitation with Child, and also an order dismissing her completely from Child's case. On appeal, Grandmother argues that she was denied statutory rights to placement and visitation, she was denied due process of law, the district court failed to use its equitable powers to order an open adoption, and she received ineffective assistance of counsel. We affirm the district court.

## FACTS AND PROCEDURAL HISTORY

{2} On November 20, 2000, Child was taken into the custody of the Children, Youth, and Families Department (CYFD) upon an abuse and neglect petition concerning both Child's mother (Mother) and Grandmother. CYFD gained custody of Child due to the ongoing conflict between Grandmother and Mother, resulting in emotional and psychological abuse of Child. Previously, Grandmother had been given visitation rights with Child in a different case, with which we are not concerned here. The family treatment plan and predispositional study (FTPS) identified sixteen incidents in which Grandmother made referrals to CYFD, and ten incidents in which Grandmother called the police department, all regarding Mother's care of Child.

{3} Child was adjudicated an abused and neglected child on January 26, 2001. Grandmother did not contest the finding by the district court that Child had suffered emotional and psychological abuse by her and Mother. Grandmother participated in the family treatment plan (FTP) entered by the court and made some effort to comply with the FTP, but Grandmother did not respond to Child appropriately. CYFD began supervising the visits between Child and Grandmother; Child seemed to want to avoid con-

tact with Grandmother. CYFD reduced the number of visits between Child and Grandmother. Child remained in custody, and the court found on November 27, 2001, that it was not in the best interest of Child to return him to either Grandmother's or Mother's custody. The court again adjudicated Child as abused and neglected, with no opposition from Grandmother.

{4} CYFD eventually made a motion to the court to terminate Mother's parental rights. CYFD also changed the permanency plan recommendation for Child from reunification to adoption. CYFD stated that the original reason that Child was taken into CYFD custody, namely, the conflict and hostility between Grandmother and Mother had not been resolved. On June 13, 2002, Mother relinquished her parental rights and consented to an adoption. Grandmother filed a motion for emergency continuation of visitation rights on July 1, 2002. The district court denied Grandmother's motion for emergency visitation rights on March 24, 2003. In this order, the district court found that Grandmother was not an appropriate placement for Child and it was in the best interest of Child to remain in CYFD's custody. A final order, dismissing Grandmother completely from Child's case, was entered on January 13, 2004. In this order, having found that Child had been adopted on November 22, 2003, the district court dismissed the case completely.

## DISCUSSION

### Timeliness of the Appeal

■ {5} We begin with the threshold issue of whether Grandmother's appeal was timely, because if it is not, then this Court does not have jurisdiction to entertain Grandmother's appeal. *State ex rel. Children, Youth & Families Dep't v. Robert E.*, 1999–NMCA–035, ¶ 9, 126 N.M. 670, 974 P.2d 164.

{6} Grandmother asserts that the order denying her visitation with Child was interlocutory in nature, and she remained a party in Child's case until the order of dismissal was entered. An order was entered on March 24, 2003, finding that Grandmother

was not an appropriate party with whom to place Child and that she should not be afforded visitation rights. The order of dismissal was filed on January 13, 2004, dismissing Grandmother from Child's case. The notice of appeal was filed, pro se, on January 20, 2004. It appears from the record that nothing happened with this appeal until January 23, 2006, when Grandmother, pro se, filed an application for free process. This Court appointed counsel to Grandmother on April 20, 2006.[1] The docketing statement was filed on July 14, 2006. CYFD does not contest the timeliness of the appeal.

{7} Grandmother points to *Robert E.*, to support her position that we presume ineffective assistance of counsel when a notice of appeal is not timely filed. 1999–NMCA–035, ¶ 9, 126 N.M. 670, 974 P.2d 164. There were two orders from the district court which Grandmother could have appealed: the order filed on March 24, 2003, which adjudicated Grandmother's rights to visitation, and the order of dismissal filed on January 13, 2004, which dismissed Grandmother completely from Child's case. In this appeal, we hold that Grandmother properly filed a timely notice of appeal from the order of dismissal, which was the final action in this case removing Grandmother from any further actions concerning Child. We do not address whether Grandmother received ineffective assistance of counsel in the timeliness of her appeal.

### Grandmother Was Not Denied Her Statutory Rights Regarding Placement and Visitation

■ {8} Grandmother argues two issues regarding her statutory rights on appeal. First, Grandmother argues that the district court erred when it found that CYFD's denial of Grandmother's right to placement was not arbitrary and capricious and could not be overruled. Second, Grandmother argues that the district court erred when it ruled that Child's adoption foreclosed all of Grandmother's rights.

1. We note that Grandmother does not appeal the adjudication that Child was abused and neglected. We question, but do not address, the issue of

whether the order for free counsel was appropriate for this case.

{9} "[District] courts are vested with broad discretion and great flexibility in fashioning custody arrangements and parenting plans that will serve *the best interests of the children." Rhinehart v. Nowlin,* 111 N.M. 319, 330, 805 P.2d 88, 99 (Ct.App.1990) (emphasis in original). We will only find an abuse in the district court's discretion when its ruling is "clearly against logic and effect of the facts and circumstances." *Id.* We resolve all conflicts and indulge all inferences in favor of the district court's decision. *Sanders v. Rosenberg,* 1997–NMSC–002, ¶ 11, 122 N.M. 692, 930 P.2d 1144. A district court abuses its discretion when it exercises its discretion based on a misunderstanding of the law. *State v. Elinski,* 1997–NMCA–117, ¶ 8, 124 N.M. 261, 948 P.2d 1209. We cannot say that the district court misunderstood the law or abused its discretion in applying the arbitrary and capricious standard.

{10} Grandmother argues that the district court's use of the arbitrary and capricious standard in reviewing CYFD's denial of Grandmother's right to placement was in error. Grandmother argues that the district court should have addressed whether CYFD made reasonable efforts to reunify Child with Grandmother. She further argues that the district court's ruling was in violation of Abuse and Neglect Act, NMSA 1978, §§ 32A–4–1 to–34 (1993, as amended through 2005), in using the wrong statutory standard. Grandmother asks that, based on this error, the case be remanded for a new hearing on the issues of placement and visitation.

{11} Grandmother's argument that the district court erred because it used an arbitrary and capricious standard in evaluating the placement of Child by CYFD fails. In reviewing whether CYFD properly placed Child, the district court stated that CYFD's determination that Grandmother was not an appropriate adoptive placement for Child was not "arbitrary or capricious." The district court did not err in using this standard because it was reviewing a discretionary act by CYFD. *See In re Jacinta M.,* 107 N.M. 769, 771, 764 P.2d 1327, 1329 (Ct.App.1988) (holding that the children's court exceeded its authority in prohibiting the Human Services Department from placing a child with her brother). CYFD has the discretion to place children within the foster system, and the district court could only overrule a CYFD decision "if the court determines [that CYFD] has … abused its discretion in the placement or proposed placement of the child." Section 32A–4–25(H)(6). In determining whether CYFD's decision was arbitrary or capricious, the district court actually gave more deference to Grandmother than she was entitled to, which was an abuse of discretion review.

{12} Grandmother further relies on numerous sections of the Abuse and Neglect Act for her contentions that her case was not adjudicated in accordance with statutory law. Grandmother argues that her statutory rights are derived from the Abuse and Neglect Act, as a "close relative and physical custodian."

{13} Grandmother's reliance on the Abuse and Neglect Act is misplaced. Nowhere in the Abuse and Neglect Act does it state that a grandparent is entitled to unfettered visitation, particularly after an adoption proceeding has taken place. Section 32A–4–22(E) states that "[t]he court *may* order reasonable visitation between a child placed in the custody of [CYFD] and the child's siblings or any other person who may significantly affect the child's *best interest,* if the court finds the visitation to be in the child's best interest." (Emphasis added.) The district court in this case clearly found that it was not in Child's best interest to be placed with Grandmother, or for Grandmother to have visitation.

{14} Grandmother also relies on Section 32A–4–22(C) for her argument that CYFD did not do enough to "preserve and reunify the family," even after Mother relinquished her rights to Child. We disagree. CYFD implemented a treatment plan, and monitored the treatment plan until the relinquishment of parental rights by Mother. There was no significant improvement in the relationship between Grandmother and Mother—the cause of the abuse and neglect petition in the first instance. CYFD also provided counseling and parenting classes for Grandmother. CYFD conducted a home study and recommended that Grandmother's home not be considered as a possible adop-

tive placement for Child. CYFD also provided psychological examinations for Grandmother, which resulted in conclusions that it would be risky to place Child with Grandmother. The district court, in its decision on the motion for emergency continuation for visitation rights, addressed these continuing problems. The district court stated that "[p]lacement of [Child] with [Grandmother] likely would result in continued contacts between [Mother] and [Grandmother], which would likely lead to more of the serious fights between those to [sic] women." Grandmother's claim that she has a statutory right to visitation, derived from the Abuse and Neglect Act, fails. The district court followed its statutory mandate to do what was best for Child's best interest. *See* § 32A–4–22(E).

{15} Grandmother's last argument is that CYFD did not provide enough assistance for Grandmother to reunite with Child. We disagree. Grandmother's dealings with CYFD were extensive. CYFD had enough basis to reject Grandmother as a placement.

**Grandmother's Right to Due Process Was Not Violated**

{16} Grandmother argues that she was "denied her right to be considered for placement, and her right to visitation with [Child], without due process of law." Grandmother's argument stems from the statutory provisions in the Abuse and Neglect Act. Grandmother also argues that "her close bond and physical custody of [Child] arguably gave her a *de facto* protected liberty interest in the relationship vis-a-vis the State of New Mexico." "The question of whether an individual was afforded due process is a question of law that we review de novo." *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003–NMSC–015, ¶ 17, 133 N.M. 827, 70 P.3d 1266.

{17} Grandmother argues that her "de facto protected liberty interest" in her relationship with Child is provided by *Moore v. City of East Cleveland*, 431 U.S. 494, 504–05, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Grandmother asserts that *Moore* expands her rights because, in this context, her rights are being opposed by the State, rather than being opposed by the biological parent. We do not see how *Moore* provides support for Grandmother's argument, nor does Grandmother point to any holding in *Moore* to lead us to reach the conclusion she asks us to reach. *Moore* held that a statute that regulated the occupancy of a household was unconstitutional because it intruded upon "freedom of personal choice in matters of marriage and family life." *Id.* at 498–99, 97 S.Ct. 1932 (internal quotation marks and citations omitted). Although we recognize that the Court in *Moore* pointed out the importance of the sanctity of the family, irrespective of whether a person is a parent or grandparent, we cannot extend that general interest to trump Child's interest in being free of the poisonous effect of the relationship between Mother and Grandmother. We agree with Grandmother that she deserves due process protections. However, we fail to find support in *Moore* to hold that Grandmother was denied her due process rights in this case.

{18} Grandmother also asserts that she was entitled to a "reasoned and balanced inquiry" by the district court. Grandmother cites to *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) for the proposition that she was entitled to certain procedural safeguards. In *Mathews*, the Court held that

due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* Grandmother did not ask the district court for any additional procedural safeguards and we cannot hold that it was error for the district court not to do so.

{19} Grandmother ultimately states a proposition with which we can agree: "[I]n the context of an abuse and neglect proceeding, the decisive issue is not the relative

interests of the parties, but whether procedural protections accorded were adequate to safeguard Grandmother's interests." "The essence of procedural due process in this context is a fair opportunity to be heard and present a defense." *Helen F. v. State ex rel. Human Servs.*, 109 N.M. 472, 475, 786 P.2d 699, 702 (Ct.App.1990), *overruled on other grounds by In re Adoption of J.J.B.*, 117 N.M. 31, 39, 868 P.2d 1256, 1264 (Ct.App. 1993); *Mafin M.*, 2003–NMSC–015, ¶ 18, 133 N.M. 827, 70 P.3d 1266 ("Procedural due process mandates that a person be accorded an opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks and citation omitted)).

{20} "[T]he primary concern in every case is whether the grandparent or grandparents have shown that an award of visitation is in the best interests and welfare of the child." *Lucero v. Hart*, 120 N.M. 794, 799, 907 P.2d 198, 203 (Ct.App.1995). Grandparents have the burden of showing that visitation is appropriate. *Deem v. Lobato*, 2004–NMCA–102, ¶ 12, 136 N.M. 266, 96 P.3d 1186; *Ridenour v. Ridenour*, 120 N.M. 352, 356–57, 901 P.2d 770, 774–75 (Ct.App.1995). "Determination of a child's best interests is ascertained by an evaluation of the child's physical, intellectual, and moral well being." *Lucero*, 120 N.M. at 799, 907 P.2d at 203 (internal quotation marks and citation omitted).

{21} In analyzing Grandmother's emergency motion for continuation of visitation rights, the district court stated that some of the abuse "resulted directly from the constant disputes between [Mother] and [Grandmother]," and also that Child had experienced abuse and neglect from Grandmother. Mother was "vehemently opposed" to placement of Child with Grandmother. The district court further found that placing Child with Grandmother would lead to the continuing, serious, and damaging conflict over Child between Mother and Grandmother. Based on the home study, the district court found that Grandmother was not considered a potential adoptive placement for Child. It was also determined that, based on psychological examinations done on Grandmother, it would be very risky to place Child with Grandmother. Ultimately, the district court found that it would be in the "best interest of [Child] that [Child] remain in the custody of CYFD." In the final order, dismissing Grandmother from the case, the district court found that Child had been adopted, which disposed of Grandmother's rights under the GVPA.

{22} We believe that the district court employed procedures that comported with due process. *See Robert E.*, 1999–NMCA–035, ¶ 26, 126 N.M. 670, 974 P.2d 164 (mentioning that notice, the opportunity to be heard, the opportunity to defend against accusations, the opportunity to challenge unfavorable evidence, the opportunity to present favorable evidence, and the right to a fair hearing before an impartial tribunal are all elements of due process). Grandmother was given numerous opportunities to be heard by the district court. She was active throughout the entire proceedings involving Child, and yet the district court determined that it was not in the best interests of Child for her to have visitation or custody. We cannot say the district court erred in this regard.

### The District Court did not Err in Failing to Use Its Equitable Powers to Order an Open Adoption

{23} Grandmother argues that the district court failed to "use its equitable power to order an open adoption, so that Grandmother could have visitation with her grandson." Grandmother argues that the district court had the equitable power to fashion a remedy that would not result in the termination of Grandmother's visitation rights.

{24} We cannot find support in the record, nor does Grandmother cite to any support, that Grandmother asked the district court to order an open adoption. The district court has "broad authority to fashion rulings in the best interests of [Child]." *Sanders*, 1997–NMSC–002, ¶ 5, 122 N.M. 692, 930 P.2d 1144. Because Grandmother did not ask the district court to order an open adoption, and substantial evidence exists to support the district court's ruling, we will not disturb the district court's decision on appeal. *See id.* ¶ 11.

**Ineffective Assistance of Counsel**

 {25} Grandmother asserts that she was denied effective assistance of counsel because of personality conflicts that she had with her first attorney and because he represented to the district court that Grandmother's rights had been derivatively removed due to the relinquishment of Mother's rights. Grandmother further asserts that she was denied effective assistance of counsel because of a personality conflict with her second attorney, and because he stated to the district court that he preferred to not be involved in the matter.

{26} The claim of ineffective assistance of counsel requires a showing that "(1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that [Grandmother] suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Aker*, 2005–NMCA–063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (internal quotation marks and citation omitted). We begin by addressing the second prong of the test, and hold that because Grandmother did not allege any prejudice arising from the alleged ineffective assistance of counsel, Grandmother has not met her burden of a prima facie case of ineffective assistance of counsel.

**Other Issues Raised Pursuant to *State ex rel. Children, Youth & Families Dep't v. Alicia P.***

{27} Grandmother raises various contentions asserting error below. Because these issues are not briefed and do not cite to any relevant authority, we decline to address them on appeal. *Frank G.*, 2005–NMCA–026, ¶ 24, 137 N.M. 137, 108 P.3d 543. Although we recognize that appellate counsel for Grandmother was obligated to raise Grandmother's contentions, *State ex rel. Children, Youth & Families Dep't v. Alicia P.*, 1999–NMCA–098, ¶ 8, 127 N.M. 664, 986 P.2d 460, we cannot address such contentions without the proper citations to the record and relevant authority.

**CONCLUSION**

{28} The district court did not err when it terminated Grandmother's visitation rights with Child and did not err in its determination that visitation or placement would not be in the best interests of Child. We affirm.

{29} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and MICHAEL E. VIGIL, Judges.