This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37893**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

       Petitioner-Appellee,

v.

**STACY H.,**

       Respondent-Appellant,

and

**CHRISTOPHER D. and DANIEL W.,**

       Respondents,

**IN THE MATTER OF KASEY D.,
DAKIERA W., and DAKOTA W.,**

       Children.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Marie C. Ward, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Appellant

Law Office of Alison Endicott-Quinones
Alison Endicott-Quinones
Albuquerque, NM

Guardian Ad Litem

## DECISION

**MEDINA, Judge.**

**{1}** Stacy H. (Mother) appeals the termination of her parental rights to Dakota W., Dakiera W., and Kasey D. (collectively, Children). For the reasons that follow, we affirm.

## BACKGROUND

**{2}** Because this is a non-precedential expedited bench decision, and the parties are familiar with the facts and procedural history of this case, we provide the following outline of events and reserve further discussion of the pertinent facts and testimony for our analysis. *See In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

**{3}** On July 16, 2015, the Children, Youth and Families Department (CYFD) filed a petition alleging Children were abused and neglected by Mother and Children's fathers.[1] On February 10, 2016, and after a trial on the merits, the district court found that there was clear and convincing evidence that Mother abused and neglected Children as defined by the Children's Code, pursuant to NMSA 1978, Section 32A-4-2(B)(1), (B)(4), and (E)(2) (2009, amended 2018), and therefore entered an adjudicatory judgment and disposition as to Mother.[2] The district court placed Children in the legal custody of CYFD, which in turn placed Children in a relative foster care placement with their maternal grandparents (collectively, Grandparents). Approximately two years later, CYFD moved to terminate Mother's parental rights to Children. The district court held the termination of parental rights (TPR) evidentiary hearing over the course of two days. After taking judicial notice of its prior adjudicatory judgment finding Children abused and neglected, and hearing testimony from several CYFD workers and Children's grandmother, the district court found that the causes and conditions of Mother's abuse and neglect of Children were unlikely to change in the foreseeable future despite CYFD making reasonable efforts to assist her. Accordingly, the district court terminated Mother's parental rights. This appeal followed.

---

1Only Dakota and Dakiera share the same father.
2The definition of neglect is now codified at NMSA 1978, Section 32A-4-2(G)(2) (2018).

**DISCUSSION**

**{4}** Mother raises three arguments on appeal. First, Mother argues there was insufficient evidence to support the district court's adjudication that Children were abused and neglected. Second, Mother contends that there was insufficient evidence to support the district court's finding that CYFD made reasonable efforts to assist her in ameliorating the causes of her abuse and neglect of Children. Lastly, Mother contends that the district court improperly terminated her parental rights when permanent guardianship with Grandparents would have better served Children's needs. We address each argument in turn.

**Standard of Review**

**{5}** The standard of proof in both abuse and neglect adjudications and termination of parental rights is clear and convincing evidence. *See* NMSA 1978, § 32A-4-29(I) (2009); *State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778. "Clear and convincing evidence is . . . evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *Lance K.*, 2009-NMCA-054, ¶ 16 (alteration, internal quotation marks, and citation omitted). Hence, when reviewing claims of evidentiary sufficiency in abuse and neglect proceedings, "we must determine whether the district court's decision is supported by substantial evidence of a clear and convincing nature." *State ex rel. Children, Youth & Families Dep't v. Alfonso M.-E.*, 2016-NMCA-021, ¶ 26, 366 P.3d 282. "We will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, [the district court] could properly determine that the clear and convincing standard was met." *Id.* (internal quotation marks and citation omitted). Thus, the question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859. To the extent our analysis entails resolving issues of law, our review is de novo. *State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 17, 136 N.M. 53, 94 P.3d 796.

**Substantial Evidence Supported Adjudication of Abuse and Neglect**

**{6}** Preliminarily, we note that CYFD makes several arguments as to why our Court should not address the merits of Mother's sufficiency argument. However, we need not address CYFD's arguments because even assuming without deciding that Mother may challenge the sufficiency of the evidence supporting the abuse and neglect adjudication, we hold that substantial evidence supports the district court's adjudication.

**{7}** After hearing testimony from several witnesses over the course of two days, the district court found that Children were abused and neglected as a result of "[Mother's] substance abuse, domestic violence in [C]hildren's presence, out of control behavior[,]

and parenting issues [that] negatively impacted her ability to ensure . . . [C]hildren's safety and well-being." The district court entered extensive findings of fact in support of its ruling, including: (1) an officer observed Mother's behavior as "out of control" and her home "to be in complete disarray, with items thrown around and broken" after responding to a report that Kasey's father had kidnapped Kasey; (2) Mother admitted that she used methamphetamine; (3) another officer responding to a domestic violence incident described Mother's demeanor as "animated and irate"; (4) a third officer responding to a domestic violence incident testified that Mother "was so out of control that she had to be placed in a patrol car for her safety, and the officers' safety"; (5) the same officer found "white powder all over the home"; and (6) a CYFD investigator observed Mother's home in disarray and found butane bottles and three methamphetamine pipes that were accessible to Children.

**{8}** Mother summarily contends the district court's adjudication was not supported by the evidence because (1) Kasey's father was the "sole problem" that led to Children being taking into custody, (2) Mother had a job and owned the home she was living in, (3) the court's concerns about her drug use were not well-founded, (4) her erratic behavior described by the witnesses was due to her being upset with Father and CYFD's intervention, and (5) her time in jail should not have been considered because her criminal case was reversed on appeal. Mother raises these arguments pursuant to *State ex rel. Children, Youth & Families Dep't v. Alicia P.*, 1999-NMCA-098, ¶ 9, 127 N.M. 664, 986 P.2d 460 (recognizing that appellate counsel should present the parent's arguments even if counsel has no faith in them).

**{9}** However, Mother does not challenge any specific finding by the district court, nor does Mother support the majority of her arguments with citations to the record and relevant authority. *See* Rule 12-318(A)(4) NMRA (stating that an appellant's brief in chief "shall set forth a specific attack on any finding, or the finding shall be deemed conclusive" and that a contention that a finding is not supported by substantial evidence shall be deemed waived "unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence"). Although we recognize that Mother's appellate counsel was obligated to raise her contentions, *see Alicia P.*, 1999-NMCA-098, ¶ 9, we cannot address such contentions without the proper citations to the record and relevant authority. *See* Rule 12-318(A)(4) (stating that an appellant shall support her argument with citations to record proper, transcript of proceedings, or exhibits relied on); *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M.764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel. Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." (citations omitted)). Accordingly, given the district court's extensive findings of fact, we affirm the district court's adjudication of abuse and neglect. *See State ex rel. Children, Youth & Families Dep't v. Senaida C.*, 2008-NMCA-007, ¶ 27, 143 N.M. 335, 176 P.3d 324 (declining to address arguments raised pursuant to *Alicia P.* that were unsupported by citations to the record or relevant authority).

**Substantial Evidence Supported Termination of Parental Rights**

**{10}** Next, Mother challenges, also pursuant to *Alicia P.*, that the evidence did not support the district court's finding that CYFD made reasonable efforts to assist her. Reviewing the evidence in the light most favorable to the district court's decision, *see Patricia H.*, 2002-NMCA-061, ¶ 31, we conclude that substantial evidence supports this finding.

**{11}** Under Section 32A-4-28(B)(2), CYFD must demonstrate, among other things, that it made reasonable efforts to assist the parent in adjusting the conditions and causes that rendered the parent unable to properly care for an abused and neglected child. We consider the totality of the circumstances when reviewing the reasonableness of CYFD's efforts. *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814. "[CYFD's] efforts should be directed to assist the parent in remedying the conditions and causes of neglect and abuse." *Id.* "Efforts to assist a parent may include individual, group, and family counseling, substance abuse treatment, mental health services, transportation, child care, and other therapeutic services." *Id.* (internal quotation marks and citation omitted). "[W]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Id.* (internal quotation marks and citation omitted). "[O]ur job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law." *Patricia H.*, 2002-NMCA-061, ¶ 28.

**{12}** As noted earlier, the district court concluded at the adjudication hearing that the causes and conditions of Children's abuse and neglect were Mother's "substance abuse, domestic violence in [C]hildren's presence, out of control behavior[,] and parenting issues." At the TPR evidentiary hearing, the district court heard testimony from several CYFD workers regarding the efforts made to help Mother adjust those conditions and causes of her abuse and neglect of Children. Sometime before March 2016, a CYFD case worker went over Mother's treatment plan with her and referred her to services for drug testing, counseling, and visitations with Children. CYFD also assisted Mother in completing a required psychosocial evaluation, in which a social worker met with Mother and reviewed her background and what brought Children into CYFD custody. In June 2016, another CYFD worker met with Mother and again went over her treatment plan with her; however, Mother responded that she did not need to participate in certain programs, including individual counseling. Additionally, Mother claimed she was already participating in drug testing through her probation for an unrelated criminal matter, although the CYFD worker confirmed that this was not true.

**{13}** In May 2017, a CYFD worker attempted to visit Mother—who was incarcerated at that point—but was unable to after the facility was put on lockdown. When Mother was released approximately one month later, the CYFD worker reviewed the treatment plan with Mother and revised it to cater more towards Mother's needs at the time. The worker reviewed the key elements of Mother's treatment plan, identifying what she needed to

complete, focusing on maintaining sobriety, Mother's drug addiction, anger management, domestic violence, and parenting classes. To this end, CYFD referred her to Rio Grande Counseling where Mother could participate in individual and family therapy, including substance abuse and domestic violence counseling. Worker attended the intake with Mother, and Mother scheduled the next appointment during the intake. CYFD provided Mother with a bus pass to help her with transportation. Mother did not return for her follow-up appointment.

**{14}** Mother did not show up for a scheduled appointment at CYFD in August; however the CYFD worker met with Mother in August during a scheduled visit with Children. Mother was frustrated and the worker attempted to discover why Mother had not been going in for her UAs or completed her orientation. Mother responded that she had been too busy and had transportation issues. The case worker provided mother with a bus pass.

**{15}** Mother did not show up for a scheduled appointment at CYFD in September 2017. A CYFD worker tried emailing, texting, and calling Mother, as well as going to Mother's home multiple times over the course of several months. Mother responded to texts inconsistently and eventually began sending profanities and threatening to sue CYFD. In the spring of 2018, Mother refused to attend another office visit and stated that she had already completed her treatment plan. However, Mother never disclosed where she completed her treatment, and there was no record that Mother completed treatment with any of the providers to which CYFD referred her. Nor was there any record that Mother ever submitted to a UA with CYFD.

**{16}** CYFD's actions of repeatedly reviewing the treatment plan with Mother, referring her to drug testing and counseling services, assisting her in obtaining evaluations, attending intake interviews with her, providing her with bus passes to transport her for services and scheduling appointments to follow up with Mother all evidence that CYFD made reasonable efforts to help Mother remedy the conditions and causes that rendered her unable to properly care for Children. Over the course of approximately two years, CYFD made numerous attempts to help Mother with her issues with addiction, domestic abuse, anger management, and parenting, but these efforts were rebuffed by Mother. As our Court has stated, "That [the parent] did not fully participate in or cooperate with the services does not render [CYFD]'s efforts unreasonable." *State ex rel. Children, Youth & Families Dep't v. Laura J.*, 2013-NMCA-057, ¶ 39, 301 P.3d 860.

**{17}** Mother contends that CYFD's efforts were unreasonable because it preferred to work with Children's fathers, rather than Mother, "well into 2016." However, the testimony demonstrates that CYFD began working with Mother on her treatment plan in March 2016, at the latest. Moreover, Mother does not explain how CYFD's efforts to work with the fathers—who were progressing in their treatment plans—rendered its efforts in regard to Mother unreasonable, and we are not obligated to review such undeveloped arguments. *See State ex rel. Children, Youth & Families Dep't v. Marsalee P.*, 2013-NMCA-062, ¶ 20, 302 P.3d 761 (recognizing that this Court does not review unclear or undeveloped arguments). Mother also argues that CYFD's efforts were

unreasonable because it never attempted a trial home visit, despite her having appropriate housing and a job. However, Mother does not point to anywhere in the record that supports her contentions that she had appropriate housing or a job. *See* Rule 12-318(A)(4). Furthermore, CYFD was not obligated to put Children through a trial home visit with Mother when she was not progressing in her treatment plan or able to demonstrate that she was not using drugs, which could have endangered Children. *See* NMSA 1978, § 32A-1-3(A) (2009) ("A child's health and safety shall be the paramount concern."); § 32A-4-28(A) ("In proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child[.]").

**{18}** For these reasons, we conclude that there was substantial evidence of a clear and convincing nature that CYFD made reasonable efforts to assist Mother in addressing the causes and conditions of her neglect and abuse of Children, notwithstanding Mother's arguments to the contrary.

**The District Court Was Not Required to Order Permanent Guardianship**

**{19}** Lastly, Mother contends that the district court improperly terminated her parental rights when it had the less severe alternative of awarding permanent guardianship to Grandparents.[3] Essentially, Mother appears to argue that the district court should have awarded permanent guardianship to Grandparents, as opposed to allowing Grandparents adopt Children, because it was in Children's best interest to preserve the family unit. We disagree.

**{20}** On December 19, 2017, CYFD filed a motion to establish Grandparents as Children's permanent guardians. Approximately two months later, CYFD withdrew its motion and informed the district court it intended to pursue termination of Mother's parental rights instead. At the TPR evidentiary hearing, CYFD explained that it initially decided to pursue permanent guardianship because Mother was making efforts to visit Children at that point. However, CYFD changed Children's permanency plan from permanent guardianship to adoption after meeting with Grandparents and determining that adoption would be more beneficial for Children, given Mother's continued lack of progress with her treatment plan. Additionally, Mother stopped taking advantage of visits with Children at Grandparent's home or acted inappropriately with Children when she did visit.

**{21}** Besides generally arguing that it is preferable to preserve the unity of the family whenever possible, *see* § 32A-1-3(A), Mother does not explain how it would be in

---

3Mother also argues that the district court's termination of her parental rights violated her due process rights. However, as Mother does not develop this argument, we do not address it. *See State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 19, 133 N.M. 827, 70 P.3d 1266 (stating that appellate courts determine if due process was satisfied in a termination proceeding by "weighing . . . [the parent]'s interest; the risk to [the parent] of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the government's interest"); *Marsalee P.*, 2013-NMCA-062, ¶ 20 (recognizing that this Court does not review unclear or undeveloped arguments).

Children's best interest to award Grandparents permanent guardianship rather than permitting them to adopt Children. Mother does not contend that Grandparents could not properly care for Children. Nor does Mother contend that she was able to change the causes and conditions of neglect and abuse in the foreseeable future. It is, therefore, unclear how it would be in Children's best interest to keep Mother's parental rights intact and prevent Grandparents from adopting them. Although we agree that it is preferable to preserve the family unit whenever possible, the primary purpose in abuse and neglect proceedings is "to provide for the care, protection and wholesome mental and physical development of children." Section 32A-1-3(A). Accordingly, we conclude the district court properly determined that termination of Mother's parental rights so Grandparents could adopt best served Children's interests. *See In re Termination of Parental Rights of Reuben & Elizabeth O.*, 1986-NMCA-031, ¶ 36, 104 N.M. 644, 725 P.2d 844 ("[I]n balancing the interests of the parents and children, the court is not required to place the children indefinitely in a legal holding pattern. To do so would force the children to wait for the uncertain possibility that the natural parents, despite their persistent and long-standing disregard of the children's interest, may remedy past faults which have rendered the children neglected.").

**CONCLUSION**

**{22}** For the foregoing reasons, we affirm the district court's termination of Mother's parental rights to Children.

**{23} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**I CONCUR:**

**JULIE J. VARGAS, Judge**

**M. MONICA ZAMORA, Judge (specially concurring)**

**M. ZAMORA, Judge (specially concurring).**

**{24}** I concur in the majority's opinion except the portion that addresses Mother's argument that there was no evidence to support the district court's finding of Mother's abuse and neglect of Children. I write specially only to note that this Court should not have addressed Mother's argument. Pursuant to *Alicia P.*, Mother contends that Children were taken into custody because of Kasey's Father's behavior, that her behavior at the time CYFD intervened was because she was upset and not because of any substance use or abuse by Mother. She also argues that her jail time should not be considered since her criminal case was reversed. It is the heading for this particular issue that alleges insufficient evidence—"the record does not support the [district] court's finding of abuse and neglect of Children by Mother." Other than her arguments, Mother fails to provide any legal analysis or authority.

**{25}** CYFD argued this Court should not address the issue, but if it does, it identifies the substantial evidence that supports the district court's finding of abuse and neglect: several-month period of Mother's multiple calls to law enforcement alleging domestic violence; Children's exposure to domestic violence; Children visibly shaken by domestic violence they observed in Mother's home; Mother's threat to use a gun to retrieve one of the Children; Mother's admission of methamphetamine use; Mother's erratic behavior; and Grandparents' reluctance to take Children in, unless CYFD intervened. My concern is that the majority states that it declines to address CYFD's developed responsive anticipatory argument, assumes without deciding, that it can address Mother's argument, and then addresses Mother's undeveloped argument.

**{26}** First, the adjudication judgment and disposition is a final, appealable order, yet Mother fails to set forth the authority that allows this Court to nonetheless address the final appealable judgment at this stage of the case. *See State ex rel. Children, Youth & Families Dep't v. Frank G.*, 2005-NMCA-026, ¶¶ 40-41, 137 N.M. 137, 108 P.3d 543 (holding that an adjudicatory order is a "final, appealable order" as issues of law and fact are determined by the conclusion of the adjudicatory trial and the case is disposed of by the trial court, within the structure of the Children's Code, and all issues of law and fact are resolved before it to the fullest extent possible.), *aff'd sub nom. In re Pamela A.G.*, 2006-NMSC-019, 139 N.M. 459, 134 P.3d 746.

**{27}** Second, Mother does not identify how she preserved her argument. An appellant, is required to provide "a statement explaining how the issue was preserved in the court below, with citations to authorities [and the] record proper[.]" Rule 12-318(A)(4). Mother, as the appellant, also carries the burden of demonstrating error below. *See* Rule 12-321(A) NMRA (requiring a party to fairly invoke a ruling from the district court in order to preserve an issue for appeal); *Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("The presumption upon review favors the correctness of the trial court's actions. [The a]ppellant must affirmatively demonstrate its assertion of error."); *see also Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

**{28}** Last, even if this Court had the authority to address a final judgment at this stage, Mother does not challenge any of the district court's findings in the adjudication judgment and disposition. "An unchallenged finding of the trial court is binding on appeal." *Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298; *see also Cockrell v. Cockrell*, 1994-NMSC-026, ¶ 9, 117 N.M. 321, 871 P.2d 977 (holding that a party may preserve questions as to the sufficiency of the evidence if the party timely submits findings of fact and conclusions of law or "otherwise call[s] the trial court's attention to a problem with the sufficiency of the evidence"). Consequently, Mother's failure to set forth a specific attack on any finding means the district court findings are deemed conclusive. *See* Rule 12-318(A)(4). "A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed

waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]" *Id.*

**{29}** Because Mother's argument is undeveloped factually and legally, this Court should not have addressed it. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (noting that an appellate court will not review unclear arguments, or guess at what a party's arguments might be).

**M. MONICA ZAMORA, Judge**