This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39571**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

      Plaintiff-Appellee,

v.

**COURTNEY F. and CHRIS F.,**

      Respondents,

**RACHEL M.-D.,**

      Other-Appellant,

**IN THE MATTER OF ELIAS F. and
JEREMIAH K.,**

      Children.

**APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY
Kathleen McGarry Ellenwood, District Judge**

Children, Youth & Families Department
Mary McQueeney, Acting Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Peak Legal Group, LLC
Harold O. Atencio
Albuquerque, NM

for Appellant

Ernest O. Pacheco

Santa Fe, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Rachel M.-D. (Aunt) appeals the denial of her motion seeking intervention and other remedies in the abuse/neglect case of her two nephews (Children). On appeal, Aunt argues that the district court abused its discretion by denying her motion to intervene and that by denying her motion, the district court violated her procedural due process rights. Finally, Aunt argues that the district court improperly failed to rule on her request for visitation, her request for a stay of adoption proceedings, and her request for sanctions against the Children, Youth, and Families Department (the Department). We affirm.

**{2}** Because this a nonprecedential expedited bench decision and the parties are familiar with the facts and procedural posture of this case, our decision includes only those facts and law necessary to decide the merits on appeal.

**BACKGROUND**

**{3}** Children are the biological twin sons of Mother and Father (collectively Parents). On June 22, 2018, two days after the birth of Children, the Department received a referral alleging physical neglect of Children. In August 2018, Children were placed in the Department's custody, shortly after which the Department filed a petition alleging Children were abused and neglected. A Department investigator asked Parents about possible relatives who could care for Children or serve as a safety monitor. Parents responded that they do not get along with their family, considered themselves as having no family, and did not identify any family members that could serve as a safety monitor or who could assist them.

**{4}** On September 6, 2018, during the ten-day custody hearing parents denied the allegations in the petition but did not contest the Department's continued custody of Children pending trial. During the hearing, the district court observed that a genogram should have already been completed. The Department responded that both parents had stated there were no relatives who would be able to offer support, that a genogram form had been provided to Mother, and that the Department was requesting completed genogram forms.

**{5}** Following the hearing, the district court ordered in part that custody of Children remain with the Department pending adjudication and that Parents provide the Department with "the names, addresses, phone numbers, and any known electronic contact information" for Children's grandparents and all other adult relatives of Children within five days of the September 6, 2018 hearing. The district court also adopted the Department's initial assessment plan, which included its own requirement that Parents

provide the Department with the names and contact information of all known relatives and to assist the Department with completing a genogram/family tree.

**{6}** The Department's October 2018 treatment plan and predispositional study reported that there were no identified relatives known to be appropriate to foster Children and that both sets of grandparents who were utilized in a prior case (involving a different child) had violated safety plans and were therefore inappropriate for foster placement. The Department stated it would continue to pursue relative placement as the permanency plan was developed.

**{7}** During the November 1, 2018 adjudicatory hearing, the district court accepted Parents' no contest pleas and adjudged Children neglected as defined by the Children's Code, pursuant to NMSA 1978, Section 32A-4-2(G)(2) (2018), and therefore entered an adjudicatory judgment and disposition as to Parents' neglect of Children. The district court adopted the Department's treatment plan, and placed legal custody of Children with the Department for a period of up to two years.

**{8}** During a March 7, 2019 interim judicial review hearing, the Department reported that at the February 2019 treatment team meeting, Parents indicated that they wished to relinquish their parental rights to Children. However Mother addressed the district court stating that her two goals were either reunification or having "the option of" Aunt adopting Children. Mother explained that Aunt had previously expressed interest in adopting Children, but that she would have to get in contact with Aunt to verify if she was still interested. The Department, unaware of Aunt prior to the hearing, requested Aunt's contact information. Mother responded that she did not have the information but that her father or mother should know how to contact Aunt.

**{9}** After disclosing Aunt's interest in Children, Mother changed her opinion several times on whether she wanted Children placed with Aunt. The Department contacted Aunt in May 2019 to begin assessing Aunt's suitability as a placement option. However, the Department's communications with Aunt were interrupted when the employee responsible for contacting Aunt took medical leave.

**{10}** Despite the break in contact with the Department, Aunt appeared and testified at the September 2019 permanency hearing. Aunt testified that she was contacted by the Department in early May 2019, that she confirmed her interest in adopting Children, and that she received follow-up emails from the Department through June 2019, but had no contact with the Department after that. Aunt also testified that she did not have an existing relationship with Children and had not spent any time with them during the past year. At the close of the hearing, the Department confirmed Aunt's contact information.

**{11}** In October 2019, the Department submitted a home study request to the Interstate Compact on the Placement of Children (ICPC) office to determine if Aunt would be a suitable placement option for Children. *See* 8.26.3.45(E)(1) NMAC (addressing ICPC process).

**{12}** In January 2020 the Department filed a motion to terminate Parents' parental rights to Children in contemplation of adoption. In February 2020 the district court entered a permanency hearing order finding that reunification was not in the best interests of Children and ordered the case plan be changed to adoption.

**{13}** In March 2020, Aunt informed the Department that she had not heard from anyone in New York, where she lives, regarding the home study process. The Department followed up with the ICPC office and learned that the ICPC documents could not be located, that several workers in the office had left, and that new documents would have to be submitted. However, in a March 2020 permanency hearing report, the Department expressed its concern with moving Children, who were now two years old and significantly bonded to their foster parents. The Department felt it would not be in Children's best interest to remove them from their current foster care placement, and because it had no plans to move Children from their current placement, it would be unfair for Aunt to go through a home study. The Department also stated in the report that, if deemed appropriate by the court, it would resubmit the packet to the ICPC office.

**{14}** In April 2020, Parents moved for an order finding that the Department failed to make reasonable efforts to locate, consider, and conduct a home study with Aunt and directing the Department to conduct a home study and consider Aunt as a placement for Children. Parents also alleged that the Department failed to follow legal mandates to locate, notify, and consider Aunt as a potential placement for Children. Parents did not submit a request for hearing on the motion.

**{15}** The district court terminated Parents' parental rights on May 7, 2020, and ordered the Department to resubmit the ICPC documents. The Department resubmitted the documents to the ICPC office on May 8, 2020.

**{16}** During a May 28, 2020 hearing, the district court denied Parents' motion for a home study and sanctions against the Department, finding that it was legally deficient on its face and observing that information argued in the motion was not of record. However the district court stated that it would permit Aunt to refile the motion given that it had ordered the Department to resubmit the ICPC documents and that a "best interest hearing" would be appropriate given that Parents' rights had already been terminated. In addition, the district court denied a request by Mother's counsel, who was now representing Aunt,[1] "to find that prior to its court order the Department did not make reasonable efforts to locate, find, or study" a relative placement because the requested finding was the basis of the motion that the district court had just denied on its face. Aunt filed a motion to intervene and request for visitation with Children on that same date.

**{17}** On September 2, 2020, Aunt filed a second amended motion to intervene, pursuant to NMSA 1978, Section 32A-4-27(A)(4) (1999)[2] in which she stated: (1) she

---

1At the May 28, 2020 hearing, Mother and Aunt had the same counsel.

2There appeared to be some confusion below regarding whether Aunt moved to intervene pursuant to Section 32A-4-27(A)(2) or (A)(4). As of this appeal, no party contests that Aunt moved to intervene pursuant to Subsection (A)(4).

wished to either adopt Children or become their permanent guardian; (2) the ICPC process was complete and the State of New York had provided the Department with a report; (3) the Department had not made reasonable efforts to consider and conduct a home study for placement of Children with her; (4) and that pursuant to NMSA 1978, § 32A-4-18 (2019), and 8.10.8.13 NMAC (9/29/2015),[3] relatives have a priority for placement. Aunt also requested video visitation with Children, a stay of any adoption proceedings, and sanctions against the Department. Both the Department and Children's guardian ad litem opposed the motion because Children had bonded with their foster parents, and Children had no previous relationship with Aunt.

**{18}** A hearing on the motion was held on September 24, 2020. At this hearing, Aunt argued that the Department had known about her for some time, but had delayed completing a home study on her, and that the Department was now arguing the merits of the ultimate placement of Children as a basis to deny Aunt's intervention. Aunt contended that the basis to allow intervention was whether intervention was in the best interest of Children, a distinct standard from ultimate placement of Children and that the intervenor did not have to show they were going to be the ultimate placement option in order to intervene. Aunt also requested a stay of any adoption proceedings, visitation, and sanctions due to her belief that the Department was ignoring the relative placement preference.

**{19}** The Department responded that, regarding the best interest of Children, they had received therapeutic recommendations that it would be detrimental to remove Children from the only home they had known since August 2018. The Department also explained that the ICPC process had been delayed due to a change in caseworker, that the Department had submitted the ICPC packet after learning about Aunt, and that it had then resubmitted the packet after learning it had been lost. The Department also argued that sanctions were inappropriate because it had not committed any intentional or malicious disregard of the law leading to the delay in the ICPC process. The guardian ad litem argued that intervention was not appropriate at this time because Children were stable in their current home.

**{20}** The district court denied Aunt's motion to intervene, finding that the Department had not failed to search for a fit and willing relative in a timely manner and that it was not in the best interest of Children for Aunt to intervene. The district court did not rule on Aunt's request for visitation, stay of adoption, or sanctions. This appeal followed.

## DISCUSSION

**{21}** Aunt appeals the denial of her motion to intervene on two bases: (1) the district court denied her due process in deciding the motion to intervene, and (2) the district court applied the incorrect standard to the motion to intervene. Aunt further contends that the denial of her motion was a result of the Department's failure to follow the relative

---

38.10.8.13 NMAC does not address relative placement, so we presume this cite was made in error. That error does not undermine the Department's obligations under Section 32A-4-18(E) and 8.10.8.10(B)(1) NMAC.

placement requirements and the district court's findings that the Department satisfied its obligations "were based on incomplete information[.]" Aunt also contends the district court erred in failing to address her requests for visitation, a stay of adoption, and sanctions. We address each of her contentions below.

**Standard of Review**

**{22}** We first address whether Aunt received due process of law when she moved to intervene. "The question of whether an individual was afforded due process is a question of law that we review de novo." *State ex rel. Child., Youth & Fams. Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 17, 133 N.M. 827, 70 P.3d 1266. We next address the district court's denial of Aunt's motion to intervene, which we review for an abuse of discretion. *See In re Termination of Parental Rights of Melvin B., Sr.*, 1989-NMCA-078, ¶ 8, 109 N.M. 18, 780 P.2d 1165.

**{23}** Finally, because the district court did not rule on Aunt's requests for visitation, stay of adoption, and sanctions, we determine whether she has standing to appeal these requests. "Whether a party has standing to sue is a question of law, which we review de novo." *State of N.M. ex rel. Child., Youth & Fams. Dep't v. John R.*, 2009-NMCA-025, ¶ 15, 145 N.M. 636, 203 P.3d 167.

**Due Process**

**{24}** Aunt contends that the denial of her motion deprived her of her procedural due process rights because she could not access the records necessary to establish that her intervention was justified and intervention was the only way a relative who wishes to be a placement option can assert their position before the court. The Department responds that Aunt received the procedural due process she was entitled to as evidenced by her motion to intervene, receipt of notice of hearing, and her presence with counsel at a hearing on her motion with an opportunity to present her case.

**{25}** "Because due process is a flexible right, the amount of process due at each stage of the proceedings is reflective of the nature of the proceeding and the interests involved, as well as the nature of the subsequent proceedings." *State ex rel. Child., Youth & Fams. Dep't v. Maria C.*, 2004-NMCA-083, ¶ 25, 136 N.M. 53, 94 P.3d 796. While parents have a fundamental, constitutional right to raise their children, nonparent relatives do not automatically have the same protected liberty interest. *Compare Mafin M.*, 2003-NMSC-015, ¶ 18 (stating the right to raise one's child is protected by the United States Constitution and termination proceedings must be conducted with "scrupulous fairness" (internal quotation marks and citation omitted)), *with In re Adoption of Doe*, 1976-NMCA-084, ¶ 40, 89 N.M. 606, 555 P.2d 906 (declining to declare a constitutional right of a grandparent to custody of his grandchild). But a nonparent relative seeking to intervene in a child custody matter does have procedural due process rights. *See State ex rel. Child., Youth & Fams. Dep't v. Senaida C.*, 2008-NMCA-007, ¶ 19, 143 N.M. 335, 176 P.3d 324. "Procedural due process requires notice to each of the parties of the issues to

be determined and opportunity to prepare and present a case on the material issues." *In re Laurie R.*, 1988-NMCA-055, ¶ 22, 107 N.M. 529, 760 P.2d 1295.

**{26}** Aunt argues her due process rights were violated because she has no *other* avenue of redress in which she can present evidence and argument on issues of placement and visitation. However, Aunt has provided no authority, and we are aware of none, that stands for the proposition that a party is entitled to intervention in a case because there may not be another avenue in which said party may complain. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Nor did Aunt adequately develop this argument for our consideration. *Elane Photography, LLC. v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 54 ("We will not review unclear arguments or guess at what a party's argument might be[,]" because to do so the appellate court "would have to develop the arguments itself, effectively performing the parties' work for them." (alteration, internal quotation marks, and citation omitted)). Rather, if intervention is *properly* denied, it is more likely that there is no avenue in which the individual is entitled to complain. *See Chino Mines Co. v. Del Curto*, 1992-NMCA-108, ¶¶ 9, 13, 17, 114 N.M. 521, 842 P.2d 738 (determining that the district court did not abuse its discretion in denying applicant's motion to intervene because applicant had not "presented sufficient evidence to establish that she ha[d] a claim or defense which properly should be adjudicated" in the case).[4]

**{27}** Finally, Aunt repeatedly contends that the Department failed to follow the law by not making reasonable efforts regarding relative placement. While she does not seek a remedy on this basis alone, she appears to connect her contention to her argument that she was denied due process. To the extent that Aunt implies the Department's purported failure to make reasonable efforts regarding relative placement warrants reversal, she makes no cogent argument on this point and provides no legal support for such a contention. "To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them." *Elane Photography*, 2013-NMSC-040, ¶ 70. "This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." *Id.*

**{28}** We conclude that Aunt's procedural due process rights were not violated, [5] and next address the district court's denial of her motion to intervene.

---

4To the extent Aunt also argues that the guardian ad litem violated his professional responsibilities by not supporting her motion, making intervention by a directly-affected relative a matter of due process, and that denial of her motion for visitation denied her due process, we decline to address these arguments because Aunt has not provided any authority supporting them, and this Court will not consider arguments that are unsupported by citation to authority. *See ITT Educ. Servs., Inc. v. Tax'n & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969.

5Aunt received the procedural due process she was owed because she was given notice of the issues to be determined and an opportunity to be heard. When Aunt submitted her motion to intervene in September 2020 with a request for setting she was given a notice of hearing and appeared at that

**Permissive Intervention**

**{29}** Aunt maintains that she should have been permitted to intervene pursuant to Section 32A-4-27(A)(4) as a person who wishes to become Children's permanent guardian due to the relative placement preference under state and federal law. Aunt contends that the district court improperly applied the intervention standard when it denied her motion to intervene because the district court's denial of intervention spoke to the ultimate placement of Children, not her intervention.[6] Aunt moved to intervene based in part on her contention that the Department did not make reasonable efforts to place Children with fit and willing relatives, a contention she repeats throughout her appeal to this Court.

**{30}** The Department responds that the district court complied with Section 32A-4-27 by considering Aunt's motivation and weighing Children's best interests concerning Aunt's intervention. The Department also argues that the district court's order reflects that it understood the different "best interest" standards because it explicitly recognized that two different standards applied to intervention and placement. The Department asserts that it is the district court's role to ensure the Department complies with its statutory requirements, not Aunt's role, and that the district court did so by repeatedly finding the Department made reasonable efforts concerning relatives. For the reasons stated below, we conclude that the district court did not abuse its discretion by denying the motion to intervene.

**{31}** Any person who wishes to become the child's permanent guardian may be permitted to intervene via a motion for affirmative relief at any stage of an abuse or neglect proceeding. Section 32A-4-27(A)(4). "When determining whether a person . . . should be permitted to intervene, the court shall consider: (1) the person's rationale for the purposed intervention; and (2) whether intervention is in the best interest of the child." Section 32A-4-27(B). "When the court determines that the child's best interest will be served as a result of intervention . . . the court may permit intervention[.]"Section 32A-4-27(C). "The trial court has a good deal of discretion in determining whether to allow intervention. We will not reverse the decision of the trial court absent a showing of abuse of that discretion." *In re Termination of Parental Rights of Melvin B., Sr.*, 1989-NMCA-078, ¶ 8. "We will only find an abuse in the district court's discretion when its ruling is clearly against logic and

---

hearing with counsel to present her case. *See In re Laurie R.*, 1988-NMCA-055, ¶ 22 (finding that the mother was given advance notice of the issues to be tried and had a reasonable opportunity to prepare and present her case).

6To support this argument, Aunt relies on *State ex rel. Child., Youth & Fams. Dep't v. Abby M.*, No. A-1-CA-29661, dec.  (N.M. Ct. App. Aug. 11, 2010) (non-precedential), a sealed unpublished memorandum opinion by this Court. Because unpublished opinions have no controlling precedential value, we decline to consider *Abby M.*, in determining the propriety of the district court's denial of Aunt's motion to intervene. *See* Rule 12-405(B) NMRA (rule governing non-precedential opinions); *Eastland Fin. Servs. v. Mendoza*, 2002-NMCA-035, ¶ 16, 132 N.M. 24, 43 P.3d 375 ("An unpublished opinion is written solely for the benefit of the parties to the action and has no controlling precedential value."). We remind parties to take caution when citing to memorandum opinions because such opinions do not "describe at length the context of the issue decided, context which may be of controlling importance in distinguishing the case from similar ones." *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361.

effect of the facts and circumstances." *Senaida C.*, 2008-NMCA-007, ¶ 9 (internal quotation marks and citation omitted).

**{32}** We cannot say the district court acted arbitrarily or unreasonably under these circumstances by denying Aunt's motion to intervene. Aunt did not move to intervene until after Children had been adjudicated abused and neglected, and Children had been in the custody of the Department for nearly two years. *See In re Termination of Parental Rights of Melvin B., Sr.*, 1989-NMCA-078, ¶ 11 (upholding denial of motion to intervene in part because stepmother did not move to intervene until after several years after her stepson had been adjudicated abused and neglected and taken into the Department's custody).

**{33}** And when Aunt did move to intervene, she asserted that she wanted to serve as permanent guardian or adopt Children and stated that her rationale in support of intervention was "to keep [C]hildren within their family as required by law." While Aunt is "family," during the September 2019 permanency hearing, Aunt, who resides in New York, admitted that she had no existing relationship with Children. Apparently, she also lacks a relationship with Parents, given Mother's inability to provide the Department with Aunt's contact information and Parents' statement to the Department that they did not get along with family and considered themselves to be without family. Children have spent nearly the entirety of their lives with their foster parents, have bonded with them, and have no relationship with their biological family. *See id.* (observing that the child had been in the physical custody of the same foster parents for an extended period of time, which supported the district court's denial of the stepmother's motion to intervene).

**{34}** To the extent Aunt argues the district court misapplied the best interest standard when it denied her intervention, we disagree. Due to Aunt's prior testimony and her expressed desire to begin to get to know Children, the district court was aware that, despite Aunt's belated motion to intervene and desire to keep Children with family, she had no existing relationship with the Children. The district court's findings reflect that it considered Aunt's lack of a relationship with Children, that Children had been living with foster parents for two years, that the foster parents were the only parents Children had ever known, and recommendations from the guardian ad litem and the Las Cumbres clinical professionals that it would be detrimental to Children to allow Aunt to intervene. There is no question that the district court considered Aunt's rationale for intervention and whether Aunt's intervention was in the best interest of Children, which is what Section 32A-4-27 requires.

**{35}** The district court's denial of Aunt's motion to intervene and the findings therein are supported by the facts and circumstances of the case. *See Senaida C.*, 2008-NMCA-007, ¶ 9. Thus, we hold that the district court did not abuse its discretion when it denied Aunt's motion to intervene.

**Visitation, Stay of Adoption, and Sanctions**

**{36}** Aunt also argues that the district court erred in not ruling on the counts of her motion requesting visitation, stay of adoption, and sanctions. The Department responds

that Aunt lacked standing to make these requests because Aunt's motion to intervene was denied, and so she was not a party to this case and had no legally protected interest.

**{37}** "To acquire standing, a plaintiff must demonstrate the existence of (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶ 8, 144 N.M. 636, 190 P.3d 1131 (internal quotation marks and citation omitted). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *John R.*, 2009-NMCA-025, ¶ 17 (internal quotation marks and citation omitted).

**{38}** As addressed above, Aunt, as a nonparent relative, does not automatically have a constitutionally protected interest in parenting Children. *Compare In re Adoption of Doe*, 1976-NMCA-084, ¶ 40 (declining to declare a constitutional right of a grandparent to custody of his grandchild), *with John R.*, 2009-NMCA-025, ¶ 18 (holding that the father had standing to appeal the decision not to appoint separate counsel for his child due to the father's legally protected interest in the child's rights as a parent). Aunt was not granted status as an intervenor, nor did the Department stipulate to her intervention. *See Laura J.*, 2013-NMCA-057, ¶ 48 (concluding that the cousin had standing to appeal due to order granting him status as an intervenor where the Department in effect stipulated that he had a sufficient legal interest in the case). Aunt provides no authority otherwise demonstrating any legally protected interest that would grant her standing to appeal. Therefore, we decline to address Aunt's arguments that the district court erred in not ruling on her motions for visitation, stay of adoption, and sanctions because she lacks standing. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that an appellate court has no duty to address arguments when no authority is presented in support of an argument).

## CONCLUSION

**{39}** We hold that Aunt was given the procedural due process she was owed when she filed her motion to intervene. Further, we conclude that the district court did not abuse its discretion in denying Aunt's motion to intervene. The denial of Aunt's motion to intervene precludes her from establishing standing to appeal the district court's decision not to rule on the remainder of her requests, and we thus decline to address them.

**{40}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**KATHERINE A. WRAY, Judge**